**CASE No. 23-2215**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

U.S.C.A. – 7th Circuit
R E C E I V E D

JUN 2 7 2023

### JENNIFER A. DUNKLEY,
**Plaintiff – Appellant,**

**v.**

## ILLINOIS DEPARTMENT OF HUMAN SERVICES, et al.,
**Defendants - Appellees,**

---

**Appeal from the United States District Court for the Southern District of Illinois**
**No. 3:18-CV-2189**
**The Honorable David W. Dugan**

---

### APPELLANT MEMORANDUM IN SUPPORT OF APPEAL

---

JENNIFER DUNKLEY- Plaintiff-Appellant, Pro Se
108 S. Spruce Street
Greenville, IL 62246
(618) 664-7343
Email: Jennifer.dunkley@gmail.com

Appellant Jennifer Dunkley comes with a brief memorandum in support of her appeal pursuant to final judgment 28 U.S.C. § 1291 and summary judgment 28 U.S.C. § 1292(a)(1). The evidence in the case did not support the verdict;The trial was unfair and the judge was biased.

The appellant was prejudiced by the district court and the defendants.

## BACKGROUND

Jennifer Dunkley was employed by the Illinois Department of Human Services, where she has served as a Public Aid Eligibility Assistant in Montgomery County and Marion County, Illinois, She has also served as Social Services Career Trainee at the Family Community Resource Center in East Alton, Madison County, Illinois. Plaintiff Jennifer Dunkley currently works for Illinois State in the Department of Health and Family Services.

On December 19, 2018, Jennifer Dunkley filed her complaint in Case No. 18-2189 alleging Local 2600 AFSCME and Illinois Department of Human Services engaged in racial discrimination against her.

On October 22, 2019, Plaintiff filed another complaint in Case No. 19-146 alleging Illinois Department of Human Services and two of its employees, Defendants Kimberly Peltes and Monica Monroy, engaged in racial discrimination; perpetuated and condoned a hostile work environment based on her race; engaged in harassment and disparate treatment; intentionally discriminated against her due to her race; and engaged in retaliatory practices when she filed racial discrimination complaints.

**FACTS**

1. On May 27, 2020, the Court granted Defendants' Motion to consolidate case number 19-1 146 with case number 18-2189 and directed that all filings bear case number 18-2189-NJR.

2. On October 5, 2020, Pursuant to Administrative Order No. 277, this case was transferred from Chief Judge Nancy J. Rosenstengel and reassigned to Judge David W. Dugan, and directed that all future pleadings bear the case number 3: 18-CV-2189-DWD.

3. On July 26, 2021 the Defendants, Illinois Department of Human Services, Peltes and Monroy  filed a Motion for Summary Judgment. (Document 191)

4. On August 24, 2021 Plaintiff, Jennifer Dunkley filed a response in opposition to the Defendants, Illinois Department of Human Services, Peltes and Monroy  Motion for Summary Judgment. (Document 201)

5. On July 26, 2021 the Defendant, AFSCME Local 2600 filed a Motion for Summary Judgment. (Document 188)

6. On August 24, 2021  Plaintiff, Jennifer Dunkley filed a response in opposition to the Defendant, AFSCME Local 2600 Motion for Summary Judgment. (Document 200)

7. On October 5, 2021 the Defendants Motion for Summary Judgment was granted. (Exhibit 1)

8. On May 11, 2022 the Defendants, Illinois Department of Human Services, Peltes and Monroy filed Motions in Limine. (Document 281)

9. On May 17, 2022 Plaintiff, Jennifer Dunkley filed a response in opposition to the Defendants, Illinois Department of Human Services, Peltes and Monroy Motions in Limine. (Document 282 )

10.   On September 12, 2022 the Defendants Motions in Limine were granted. (Exhibit 2)

11.   On June 5, 2023 A jury trial commenced

12.   On June 8, 2023 A jury verdict was given in favor of the defendants. (Exhibit 3)

13.   On June 8, 2023 A final judgment was given by the district court. ( Exhibit 4)

14.   On June 20, 2023 Plaintiff filed a Notice of Appeal.

## ARGUMENT

### a) Motions in Limine

The appellant opposed the defendant's motion to exclude vital evidence. The appellant was  prejudiced by the defendants Motions in Limine.

### b) Tampering with witnesses and Jury members at the trial

During the trial, when the jury was out of the room, the defense made an oral Rule 50 motion. Judge Dugan did not decide the motion at that time.

However, Thomas Ewick, counsel for the defendant, brought an incident to the attention of the court, at a time when the jury was out of the room. The issue involved Rory A. Cannon who is Assistant General Counsel, Illinois Department of Human Services. Rory A. Cannon  has not

filed a Notice of Appearance on this case, and is not on the case as representing the defendants.

Rory A. Cannon  reported that while he was talking to the witnesses and sharing information that the case may be dismissed because of the Rule 50 oral motion, a member of the jury walked by while he was talking. He said he did not know how much the jury member heard.

### c) Verdict forms

The parties jointly submitted agreed to jury verdict forms. (Exhibit 5). However, the court created another set of verdict forms. The court's verdict forms only had three of the plaintiffs' claims. (Exhibit 3)The plaintiff had six claims for relief, they are  racial discrimination; a hostile work environment based on her race; harassment, disparate treatment; intentionally discriminated due to her race; and retaliation. The verdict forms with only three claims were given to the jury.

### d) Bureau of Civil Affairs report

On Sunday, June 4, 2023 defendants filed  an untimely Motion in Limine to exclude BCA investigative report findings. (Exhibit 6)

On Monday, June 5, 2023 appellant filed a response opposing defendants motion in Limine. (Exhibit 7)

On June 6, 2023 The defense submitted a proposed limiting instruction from the defense to be included in the jury instructions. It stated that the jury may consider the BCA evidence only for the limited purpose of establishing the fact that Plaintiff made certain complaints to the Bureau of Civil Affairs and the Bureau made certain findings and recommendations and not for the truth of the statements made within Plaintiff's complaints. (Exhibit 8)

The appellant was  prejudiced by the defendants limiting instruction regarding evidence of the Bureau of Civil Affairs report. (Exhibit 9)

### e) Summary Judgment

The most important rule for summary judgment is that all inferences, the weight of all evidence, and each credibility determination are to be made in favor of the non-moving party. This is what the Supreme Court calls the "axiom" of summary judgment, the judge's function on summary judgment is not to weigh the evidence but to view it in the light most favorable to the non-moving party.

The appellant was  prejudiced by the district court granting Summary Judgement to the defendants.

### f) Defendant Kimberly Peltes committed perjury in her Declaration Statement

An individual commits perjury when, under oath, he willfully (under 1621) or knowingly (under 1623) makes a false statement as to a material matter. The first type of perjury involves statements made under oath, and requires proof that:

a) A person took an oath to truthfully testify, declare, depose, or certify, verbally or in writing;
b) The person made a statement that was not true.
c) The person knew the statement to be untrue.
d) The Plaintiff disputed No.59 of Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgement.


No. 59. Ultimately, on August 20, 2019, Ulanda Lloyd made the decision to not certify Plaintiff as a Human Services Caseworker. (Peltes Declaration, 42).

The Plaintiff disputed No.59 of Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgement.

No. 59. Ultimately, on August 20, 2019, Ulanda Lloyd made the decision to not certify Plaintiff as a Human Services Caseworker. See Exhibit 1, Peltes Declaration, 42.

No. 59: DISPUTED

In August 2019, Lloyd was off from work for an extended period of time due to a death in her family. On August 20, 2019 Ulanda Lloyd was off from work. On August 20, 2019 Peltes called the plaintiff into a meeting and told her that she would not be certified and that she should report to Marion County FCRC for work on August 21, 2019. In her August 13, 2019 email Peltes wrote "I assume Ulanda will be out of the office for a while so I

wanted to reach out in an attempt to see what can be done to resolve this matter". See Exhibit I, Dunkley Declaration II 10; Exhibit 18, Peltes August 13, 2019, email, pl .

Evidence of Kimberly Peltes emails which were submitted to the court show that Ulanda Lloyd did not make the decision not to certify the plaintiff as caseworker. In Kimberly Peltes August 13 th email to Angela Imhoff she states, I am attempting to see if there is any kind of update as to what has been decided regarding Ms. Dunkley. In the same email Peltes also states "I assume Ulanda will be out of office for a while so I wanted to reach out and see what can be done in this matter. Kimberly Peltes, August 1 9 th email to Angela Imhoff she asks, "Who are we waiting for to make a decision? Peltes August 19 th , 2019 email shows that a decision regarding plaintiff's certification was not made as yet.

The plaintiff was demoted on August 20, 2019. In August 2019, Lloyd was off from work for an extended period of time due to a death in her family. On August 20, 2019 Ulanda Lloyd was off from work.

Plaintiff believes that 42 in the defendant's Declaration, under penalty of perjury, as required by 28 U.S.C. SS 1746, by Kimberly Peltes, and #59 in Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgment is not true and the defendants knew it was not true. This is a material matter in this case because Kimberly Peltes in her role as supervisor did not have the authority to certify or demote the plaintiff. The plaintiff reported to the court that Kimberly Peltes may have committed perjury in her declaration.

Defendant Kimberly Peltes committed perjury in her Declaration Statement when she said "ultimately, on August 20, 2019, Ulanda Lloyd made the decision to not certify Plaintiff as a Human Services Caseworker".

Plaintiff believes that # 42 in the defendant's Declaration, under penalty of perjury, as required by 28 U.S.C. 51746, by Kimberly Peltes, and #59 in Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgment is not true and the defendants and their counsel knew it was not true.

This is a material matter in this case because Kimberly Peltes in her role as supervisor did not have the authority to certify or demote the plaintiff. This responsibility is solely for the Local Office Administrator, who was Ulanda Lloyd in August 2019. The plaintiff reported to the district court that Kimberly Peltes may have committed perjury in her declaration.

Peltes August 19 th, 2019 email shows that a decision regarding plaintiff's certification was not made as yet. The plaintiff was demoted on August 20, 2019 by Kimberly Peltes.

## g) Bias of Judge David W. Dugan

The first criteria set forth in 28 U.S.C. 1292(b), a question of law is controlling if its incorrect disposition is one that would require reversal of the final judgment. See Kapossy, 942 F. Supp. at 1001 (citing Katz, 496 F.2d at 755).

A motion to file an interlocutory appeal may be denied if the moving party merely questions the correctness of a court's ruling. See Kapossy, 942 F. Supp. at 1001 (citing United States v. Grand Trunk W.R. Co., 95 F.R.D. 463, 471. The plaintiff is not purely questioning the correctness of the court's ruling but also the  appropriateness of the judge.

Judge David W. Dugan failed to view all inferences and the weight of all evidence, in the light most favorable to the plaintiff, who was the non-moving party because of his bias. The Plaintiff, Jennifer Dunkley is an employee of the State of Illinois since September I , 2015. She brought claims against the State of Illinois, Department of Human Services for racial discrimination, hostile work environment harassment, disparate treatment, intentionally discriminated and retaliation.

Defendant Illinois Department of Human Services, Kimberly Peltes and Monica Monroy are being represented by the Illinois State Attorney General.

Judge David W. Dugan worked for the state of Illinois in the general practice of law in Madison County, Illinois, during which he served as a part-time Assistant State's Attorney prior to becoming a judge. In February of 2017, Judge Dugan was nominated to be a Circuit Judge by the Illinois Supreme Court Chief. Justice Lloyd Karmeier and then appointed to the Circuit Court by the Illinois Supreme Court. Judges may recuse themselves as the judge in cases where there may be a potential personal bias or other personal involvement in the case without either party bringing an issue to the court's attention. As such, a recusal is mandated. However, Judge David Dugan did not recuse himself, furthermore on October 19, 2021 Judge Dugan denied Plaintiff's motion to recuse.

Judge J. Phil Gilbert and Magistrate Judge Reona J. Daly were assigned to plaintiffs' cases on 12/19/2018. On 12/20/2018 Judge J. Phil Gilbert recused himself from the plaintiff's case. Similar to Judge David W. Dugan, Judge J. Phil Gilbert also had a professional relationship with the State of Illinois. The Special Committee that reviewed Judge J. Phil Gilbert circumstances said for him, disqualification from all cases to which the

state of Illinois, or any of its employees, is a party, would best serve to avoid any appearance of partiality

3. The first criteria set forth in 28 U.S.C. 1292(b), a question of law is controlling if its incorrect disposition is one that would require reversal of the final judgment.

## h)Prima Facie Case

The plaintiff must prove that she (l) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances. The plaintiff also established a prima facie case by presenting enough evidence to proceed to trial.

The Plaintiff disputed forty-three facts in Plaintiff's Response in Opposition to AFSCME Local 2600 Undisputed Material Facts in Motion for Summary Judgment, which are numbers l, 3, 5, 10, 11, 12, 13, 14, 16, 20, 21, 22, 30, 32, 33, 35, 38, 39, 40, 43, 44, 47, 48, 55, 57, 60, 61, 70, 71, 72, 74, 76, 78, 79, 80, 81, 82, 84, 85, 89, 90, 95, and 96.

The Plaintiff disputed thirty-five facts in the Plaintiff' Response in Opposition to Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgment, which are numbers 2, 3, 13, 14, 16, 17, 20, 23, 26, 33, 26, 37, 41, 43, 44, 50, 52, 53, 55, 56, 58, 59, 64, 65, 70, 71, 72, 73, 74, 75, 76, 79, 81, 84, and 85.

A prima facie case is one which covers the allegations made and which, if they are believed, is complete and sufficient to justify a verdict in the

complainant's favor. The district court did not view the evidence most favorable to the nonmoving party.

## i) Change for Cause

A motion to disqualify a judge must be: (i) in writing; (ii) accompanied by a factual affidavit; and (iii) filed no less than five days before trial, unless the grounds for disqualification are not discovered until after that time or other good cause exists. See G.S. 15A-1223(c), (d); *State v. Moffitt*, 185 N.C. App. 308 (2007) If the allegations in the motion to recuse are such that findings of facts will be required regarding the alleged basis of the judge's bias or conflict, the judge should refer the matter to another judge to conduct the hearing. See *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303 (1976) (citing *Ponder v. Davis*, 233 N.C. 699 (1951));

On November 4, 2021  Appellant filed a Change  for cause. Also on November 28, 2022  Appellant filed another Change for cause, However, Judge Dugan did not refer the motion to another judge to conduct a hearing. (Exhibit 10)

Judge Dugan unilaterally denied the Appellant's Change for cause. (Exhibit 11)

For the foregoing reasons the appellant respectfully requests that her appeal be granted.

Respectfully Submitted,

*Jennifer Dunkley*

Jennifer Dunkley, Appellant

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618) 664 – 7343
Email: Jennifer.dunkley@gmail.com

Dated: June 27, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on  June 27, 2023, I filed the foregoing  APPELLANT MEMORANDUM IN SUPPORT OF APPEAL with the Clerk of the Court. I hereby further certify that on June 27, 2023, I emailed, and also I mailed by United States Postal Service same document to the following registered participant:

Melissa J. Auerbach Lead Counsel,
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue, 19 Floor
Chicago, Illinois 60603
Email: mauerbach@laboradvocates.com

Nadine J.  Wichern
Assistant Attorney General
100 West Randolph Street 12th Floor
Chicago, Illinois 60601
(312) 814-2090 (office)
nwichern@atg.state.il.us

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618)664-7343
jennifer.dunkley@gmail.com

Jennifer Dunkley, Plaintiff

*Jennifer Dunkley*

June 27, 2023

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNIFER A. DUNKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18-cv-2189-DWD |
| | ) | |
| LOCAL 2600 AFSCME,[1] | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| HUMAN SERVICES, | ) | |
| KIMBERLY PELTES, and | ) | |
| MONICA MONROY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Jennifer Dunkley worked for the Illinois Department of Humans Services ("IDHS") from 2015 to 2020. In 2018 and 2019, she brought claims for racial discrimination against IDHS, her labor union AFSCME Local 2600, and other IDHS employees, including Kimberly Peltes and Monica Monroy.[2] Now before the Court are motions for summary judgment filed by Defendants AFSCME Local 2600, Kimberly Peltes, and Monica Monroy. (Docs. 188 & 191) The motions are fully briefed and ripe for decision. (Docs. 189, 192, 200, 201, 208, 209) For the following reasons, the motions for summary judgment are due to be granted.[3]

---

[1] Defendant AFSCME Local 2600 has consistently identified itself as such and not as "Local 2600 AFSCME." Accordingly, the Clerk of Court is directed to correct Defendant's name in the docket to "AFSCME Local 2600."

[2] The two cases, 18-cv-2189 and 19-cv-1146, were consolidated on May 28, 2020. (Doc. 76)

[3] Dunkley has filed motions to strike Defendants' reply briefs. (Docs. 210 & 212) And Defendants have filed a joint motion to strike a notice filed by Dunkley regarding her exhibits. (Doc. 215) These motions are also

## I. FACTUAL BACKGROUND

Dunkley began working for IDHS at the Montgomery County Family and Community Resource Center ("Montgomery FCRC") in 2015 as a Public Aid Eligibility Assistant. (Doc. 192-6 at 7) She was the only black employee at the Montgomery FCRC and was a member of a bargaining unit represented by AFSCME Local 2600. (Doc. 192-6 at 9) AFSCME Local 2600 is a local union that represents IDHS employees in Sangamon County, Christian County, and Montgomery County. (Doc. 188-10 at 2) Members of AFSCME Local 2600 are covered by a statewide collective bargaining agreement ("CBA") between the State of Illinois and AFSCME Council 31, which is a statewide labor organization and is separate from AFSCME Local 2600. (Doc. 188-10 at 3)

The first two steps of the CBA's grievance procedures consist of communicating with the employee's immediate supervisor and intermediate administrator, and each are handled by AFSCME Local 2600. (Docs. 188-10 at 4 & 188-11 at 20–21) The third and fourth steps consist of communicating with the agency head and, if unsuccessful, proceeding to pre-arbitration discussions and arbitration. (Doc. 188-11 at 21–22) The third and fourth steps are handled by AFCSME Council 31 and not by AFCSME Local 2600. (Doc. 188-10 at 4)

In March 2017, Dunkley contacted AFCSME Local 2600 President Melanie Hoyle asking to speak to a union representative regarding changes in her duties as a Public Aid

---

fully briefed. (Docs. 210–16) The Court finds that exceptional circumstances existed justifying Defendants' reply briefs under Local Rule 7.1(c). Accordingly, Dunkley's motions to strike are due to be denied. The Court further finds that Dunkley's notice (Doc. 213) was filed to correct a clerical error and caused no prejudice to Defendants. Accordingly, Defendants' motion to strike the notice is also due to be denied.

Eligibility Assistant. (Doc. 188-10 at 4) Hoyle forwarded the request to Lisa Eden, a union steward, and asked her to respond to it. (Doc. 188-10 at 4) Eden and Dena McGill, AFSCME Local 2600 Executive Steward, met with Dunkley in late March 2017. (Doc. 188-10 at 10) At the meeting, Dunkley explained that she felt she was being treated unfairly by her supervisor, Patricia Herker, who was the Local Office Administrator ("LOA") and who had moved Dunkley out of her private office to an open area. (Doc. 188-10 at 9–10) McGill explained to Dunkley that LOAs "can move the office in whatever way they choose." (Doc. 188-10 at 22)

On May 10, 2017, Eden was present at a meeting at which Herker gave Dunkley an unfavorable evaluation. (Doc. 188-10 at 11) Eden did not file a grievance regarding the evaluation. (Doc. 188-10 at 11) She does not normally file grievances over evaluations and has never done so on behalf of a non-black union member. (Doc. 188-10 at 11) On May 15, 2017, Harker issued a counseling to Dunkley in a meeting at which Eden was present. (Doc. 188-10 at 11) Under the CBA, counseling is not considered a disciplinary action. (Doc. 188-11 at 31) AFSCME Local 2600 did not file a grievance after this meeting. (Doc. 38 at 22) Eden told Dunkley that the job might not be a good fit for her and that she should consider looking for other jobs—advice that she has also given to non-black union members. (Doc. 188-10 at 12)

On June 19, 2017, Herker held a pre-disciplinary meeting with Dunkley, at which Eden was present. (Doc. 188-10 at 14) After the meeting, Eden asked Dunkley to let the union review her rebuttal to the meeting before submitting it. (Doc. 188-10 at 14) Dunkley declined to have the union review her rebuttal, citing her belief that Eden had been

"relaxing and fraternizing with Patricia Herker, LOA after the meeting," which Dunkley concluded was "collusion." (Doc. 188-12 at 33) After Dunkley submitted her rebuttal, Herker informed her that she was being given a five-day suspension. (Doc. 188-10 at 17) On June 28, 2017, Eden filed a grievance over the suspension. (Doc. 188-10 at 17) Dunkley emailed Hoyle asking her to withdraw the grievance, but Hoyle refused, citing the need to "preserve the integrity of the Master Contract." (Doc. 188-13 at 16–17) Dunkley's suspension was reversed and expunged from her record. (Doc. 188-16 at 22)

On July 13, 2017, Herker met with Dunkley and issued her an oral reprimand, and Dunkley signed a document waiving union representation at the meeting. (Docs. 188-10 at 18 & 188-13 at 34) Eden does not recall Dunkley requesting a grievance be filed over the oral reprimand, and Eden did not file a grievance over the oral reprimand. (Doc. 188-10 at 19) On August 7, 2017, Herker gave Dunkley a seven-day suspension. (Doc. 188-5 at 7) Eden suggested that Dunkley could file a grievance based on failure to follow progressive discipline. (Doc. 188-5 at 12) But Dunkley requested that a grievance be filed for falsification. (Doc. 188-5 at 14) Eden investigated Dunkley's claim of falsification but found that it could not be substantiated and did not file a grievance over her seven-day suspension. (Doc. 188-10 at 20)

In the fall of 2017, Eden negotiated with IDHS labor relations liaison Rick Starr for Dunkley to be transferred to the Marion County Family and Community Resource Center ("Marion FCRC"). (Doc. 188-10 at 21–22) Dunkley was transferred to the Marion FCRC in October 2017. (Doc. 188-10 at 24) Next, Dunkley worked for IDHS at the Madison County/East Alton Family and Community Resource Center ("Madison FCRC") from

4

September 2018 to August 2019 as a Social Services Career Trainee. (Doc. 192-1 at 1 & 6) A trainee serves a probationary period of up to 12 months and can be certified as a Human Services Caseworker six to 12 months after the beginning of the probationary period. (Doc. 192-1 at 2) During the probationary period, a trainee learns to process and certify applications for public assistance. (Doc. 192-1 at 2) When trainees are learning to certify cases, all of their work is subject to review, known as "one hundred percent review." (Doc. 192-1 at 3) The review may be reduced depending on the trainee's progress. (Doc. 192-1 at 3) Peltes was Dunkley's direct supervisor while Dunkley was a trainee at the Madison FCRC and was responsible for reviewing Dunkley's work during her probationary period. (Doc. 192-1 at 1 & 3)

Dunkley attended a caseworker training course on November 27–30, 2018. (Doc. 192-2 at 2) Monroy works as a trainer in IDHS's Bureau of Training and Development and was the trainer for Dunkley's course. (Doc. 192-2 at 1–2) On November 28, 2018, Monroy sent an email to the Acting Bureau Chief of the Bureau of Training and Development describing Dunkley's poor performance in the course. (Doc. 192-7) The email makes no reference to Dunkley's race. (Doc. 192-7) Monroy's email was forwarded to management at the Madison FCRC. (Docs. 192-8 at 13–14 & 192-9) On December 3, 2018, Ulanda Lloyd, the Madison FCRC's LOA, Peltes, and Scott Lankford, a union representative, met with Dunkley. (Doc. 192-1 at 4) Peltes sent Dunkley a follow-up email afterwards summarizing that Dunkley was informed of Monroy's email, instructing Dunkley that she was to actively participate and follow the trainer's instructions, and reminding her that she was not to conduct interviews or certify cases. (Doc. 192-10 at 2)

In January 2019, Lloyd authorized Dunkley to work overtime hours but later revoked that authorization after Peltes told her that Dunkley was not doing enough cases in overtime. (Docs. 192-1 at 4 & 201-1 at 3) On January 28, 2019, Peltes informed Dunkley that she was no longer subject to one hundred percent review. (Doc. 192-1 at 4) On March 23, 2019, Dunkley sent an email to Lloyd, and copied Peltes, making a complaint of retaliation and racial discrimination against Peltes. (Doc. 192-1 at 5) Peltes emailed Dunkley on April 10, 2019, and informed her that she would again be subject to one hundred percent review because of the number of errors she made in recent cases. (Doc. 192-3) Peltes tracked Dunkley's errors on her Case Review Log. (Doc. 192-4)

In May 2019, Peltes drafted a Corrective Action Plan for Dunkley at the direction of the Regional Administrator. (Docs. 192-1 at 5 & 192-11) The Plan lasted for 30 days and provided a detailed list of expectations for Dunkley. (Doc. 192-11) At the conclusion of the plan, Peltes recommended that Dunkley not be certified as a caseworker. (Doc. 192-1 at 5 & 192-13) Her recommendation does not reference Dunkley's race. (Doc. 192-13) On August 20, 2019, Lloyd decided not to certify Dunkley as a caseworker.[4] (Doc. 192-1 at 6) Because she was not certified, Dunkley was demoted to her previous position as a Public Aid Eligibility Assistance at the Montgomery FCRC. (Doc. 192-1 at 6) She left her employment at IDHS in October 2020. (Doc. 192-6 at 13)

---

[4] Dunkley indicated that she disputes this assertion. (Doc. 201 at 9) However, she only asserts that Lloyd was off from work that day and Peltes informed her of the decision. She does not actually assert that Lloyd did not make the decision. Peltes provided a sworn declaration in which she asserts unambiguously that she did not have the authority to certify trainees to become caseworkers and that Lloyd, as the LOA, made the decision not to certify Dunkley as a caseworker on August 20, 2019. (Doc. 192-1 at 6)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. Proc. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## III.  DISCUSSION

Dunkley brings six specific claims against AFSCME Local 2600 under Title VII and 42 U.S.C. § 1981 and against Monroy and Peltes under 42 U.S.C. § 1983: (1) racial discrimination, (2) hostile work environment, (3) harassment, (4) disparate treatment, (5)

intentional discrimination, and (6) retaliation.[5] Discrimination claims are evaluated under the same standards whether brought under Title VII, § 1981, or § 1983. *Purtue v. Wisc. Dep't of Corrs.*, 963 F.3d 598, 601 (7th Cir. 2020); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 n.2 (7th Cir. 2014). The Court will evaluate AFSCME Local 2600 and Monroy and Peltes's arguments in turn.

## A.    AFSCME Local 2600

Title VII forbids labor unions from discriminating on the basis of race. 42 U.S.C. § 2000e-2(c). To survive summary judgment, Dunkley must provide evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race" caused the union to discriminate against her. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "For example, plaintiffs commonly point to 'ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment.'" *Purtue*, 963 F.3d at 602 (quoting *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020)).

Dunkley argues that AFSCME Local 2600 treated Roberta Meyer, another union member who worked at Montgomery FCRC, more favorably. (Docs. 118-10 at 28 & 188-1 at 13) Specifically, she asserted that Meyer received a promotion. However, to establish discrimination with evidence of disparate treatment of similarly situated individuals, the individuals must be comparable "in all material respects." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368–69 (7th Cir. 2019). Typically, the plaintiff must show

---

[5] The Court dismissed Dunkley's retaliation claim against AFSCME Local 2600 on March 6, 2020. (Doc. 64 at 10)

that the individuals had the same supervisor, were subject to the same standards, and engaged in similar conduct. *Id.* at 369. Dunkley has failed to provide evidence of any of these similarities and even concedes that different union stewards may have assisted her and Meyer. (Doc. 200 at 11) Eden testified that she never filed a grievance on Meyer's behalf or played any role in Meyer's promotion. (Doc. 118-10 at 28) And Dunkley provides no serious argument that a reasonable jury could infer discrimination from AFSCME Local 2600's treatment of Meyer.

Dunkley has not provided any other evidence showing that the union discriminated against her because of her race. She points to many incidents when she believes the union failed to adequately represent her. But none of these incidents show that the union was motivated by Dunkley's race, even assuming union representatives could have done more on her behalf. There is no evidence in the record of any other similarly situated union members who were treated more favorably or any statements or dishonest justifications for disparate treatment suggestive of racial animus. *See Purtue*, 963 F.3d at 602. Therefore, this Court believes that no reasonable jury could find that AFSCME Local 2600 discriminated against Dunkley, and its motion is due to be granted.

## B.    Monroy and Peltes

Dunkley's claims against Monroy and Peltes fall into three categories: (1) racial discrimination, (2) hostile work environment, and (3) retaliation. The Court will address each category of claims in turn.

### 1.    *Racial Discrimination*

Dunkley points to Monroy's November 28, 2018, email as evidence of racial discrimination. Monroy's email described Dunkley's poor performance in a training course but did not refer to her race nor suggest that her judgment of poor performance was influenced by her race. Dunkley points to the fact that no white participant in the course was also the subject of a written report by Monroy. (Doc. 201 at 11) Yet, this argument also fails to provide evidence of discrimination. Dunkley has not shown that she was similarly situated to the white participants in the course. She claims that she received a final score of 85% for the course but does not provide evidence of the other participants' scores or their conduct during the course. (Doc. 201 at 11) Without such evidence, the Court cannot find that the other participants were comparable to Dunkley "in all material respects." *See McDaniel*, 940 F.3d at 368–69.

Even if Monroy had shown racial animus against Dunkley, there is no evidence that Monroy was ever the decisionmaker in an adverse employment action taken against Dunkley. *See Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 378–79 (7th Cir. 2011) (holding that plaintiff must show that a decisionmaker acted for a prohibited reason to prevail on a Title VII claim). Her letter may have influenced later decisions regarding Dunkley's employment, but there is no evidence that she had authority to make any such decisions herself. Dunkley also cannot succeed under a "cat's paw" theory of liability because she has not shown that Monroy's letter had a "singular influence" over the ultimate decisionmaker. *See id.* at 379. Dunkley has not met her burden to provide evidence that would permit a reasonable jury to find that Monroy discriminated against her based on her race.

Dunkley has also not shown that Peltes ever took an adverse employment action against Dunkley. Dunkley attributes three adverse employment actions to Peltes: (1) the revocation of her authorization to work overtime, (2) her return to one hundred percent review on April 10, 2019, and (3) her demotion to Public Aid Eligibility Assistant on August 20, 2019. However, Dunkley has not met her burden to show that Peltes was responsible for the overtime or demotion decisions. In both cases, Lloyd made the decision. Even if Peltes made recommendations to Lloyd in both instances, Dunkley has also not provided evidence to support a "cat's paw" theory of liability because she has not shown that Peltes's recommendation had a singular influence over Lloyd's decision. *See Schandelmeier-Bartels*, 634 F.3d at 378–79.

As to the return to one hundred percent review, that event does not constitute an adverse employment action. An adverse employment action must be a "materially adverse change in the terms and conditions of employment . . . more disruptive than a mere inconvenience or an alteration of job responsibilities." *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The return to one hundred percent review altered Dunkley's daily job responsibilities. But Dunkley has not shown that the change constituted a demotion or resulted in a material loss of benefits or "significantly diminished material responsibilities." *Id.*

Even if Dunkley had shown that Peltes took an adverse employment action against her, Dunkley has provided no evidence that Peltes's actions were motivated by racial animus. Dunkley asserts that Peltes treated other white employees more favorably.

11

However, Dunkley fails to show that these other employees were similarly situated to herself. For instance, Dunkley claims that Melanie Cannon was promoted to a caseworker position before Dunkley. (Doc. 192-6 at 111–12) Yet, Dunkley could not provide information about Cannon's qualifications (Doc. 192-6 at 112) and concedes that Peltes was not Cannon's supervisor (Doc. 201 at 12), which alone indicates that the employees were not similarly situated. *See McDaniel*, 940 F.3d at 368–69. Dunkley also points to three other white employees who were not subject to one hundred percent review as long as she was but admits that they all had different supervisors. (Doc. 192-6 at 122) The only evidence she has provided about white employees at Madison FCRC shows that these employees were not similarly situated to her.

Dunkley also argues that Peltes's negative evaluation relied on her claim that Dunkley made numerous errors as a trainee. But Dunkley argues that Peltes's claim is inconsistent with a report titled "October 2020 Quality Control Negative Case Review Findings," which is published by the Bureau of SNAP Integrity and which Dunkley claims does not indicate that she made any errors in her cases. (Docs. 201-1 at 4 & 203 at 11–17) However, the report does little to undermine Peltes's negative evaluation for several reasons. First, nothing in the report indicates that it is an exhaustive listing of all errors made by FCRC staff. Dunkley has not produced evidence showing that the publishers would have included every mistake they believed she had made. Second, the report reflects reviews of negative (denied or cancelled) SNAP cases only. Finally, the report does not name the FCRC staff involved in each case on the report. Without additional evidence from the publishers of the report or someone else with personal

knowledge of it, the Court has no way of confirming that none of the mistakes discussed in the report belong to Dunkley. For these reasons, the Court finds that the report does not constitute evidence showing that Peltes's negative evaluation was discriminatory.

Dunkley also asserts that Regional Administrator Angela Imhoff told Peltes that some of the items she had marked as errors "were not to be marked as errors but as FYI." (Doc. 201-1 at 3–4) This evidence too falls short of so undermining Peltes's negative evaluation as to suggest that it was motivated by racial animus. Dunkley simply has not produced sufficient evidence to open the door to an inference of discrimination. For these reasons, the Court believes no reasonable jury could find that Peltes racially discriminated against Dunkley.

### 2.    *Hostile Work Environment*

A hostile work environment claim will only survive summary judgment if the plaintiff shows that "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009). Monroy's letter constitutes only a single instance of alleged harassment and therefore was not "severe or pervasive." Further, Dunkley has not shown evidence that the letter was written because she is black. As discussed above, the letter does not mention Dunkley's race, and she has failed to provide evidence suggesting that Monroy treated similarly situated white participants more favorably than her.

Dunkley also has not shown that Peltes created a hostile work environment

because of her race. Even assuming that Peltes's actions constituted harassment, Dunkley

provides no evidence that they were based on Dunkley's race. As discussed above, Peltes

may have treated other employees more favorably, but Dunkley has not shown that those

employees were similarly situated to her. And Dunkley has provided no evidence that

Peltes treatment of her was racially motivated. Therefore, no reasonable jury could

conclude that Monroy or Peltes engaged in race-based harassment that created a hostile

work environment for Dunkley.

### 3.    *Retaliation*

Title VII prohibits employers from discriminating against an employee "because

he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The plaintiff must show

that there is enough evidence to permit a reasonable factfinder to conclude that the

employer's retaliatory motive caused the adverse employment action. *See Igasaki v. Ill.*

*Dep't of Fin. & Professional Regulation*, 988 F.3d 948, 959 (7th Cir. 2021).

Dunkley claims that Monroy's letter was an act of retaliation but fails to point out

any complaint or charge she made prior to Monroy's letter. (Case No. 19-cv-1146, Doc. 2

at 16–18) Thus, she cannot establish that Monroy retaliated against her as prohibited by

Title VII. Dunkley did make a complaint of discrimination against Peltes on March 23,

2019, and she claims that Peltes demoted her in retaliation for the complaint. (Case No.

19-cv-1146, Doc. 2 at 22 & 27)

Dunkley alleges three acts of retaliation: Peltes gave her an unfavorable evaluation

on April 26, 2019 (Case No. 19-cv-1146, Doc. 2 at 20–21); Dunkley was told she could not

work overtime in a meeting with Peltes and Lloyd on March 26, 2019. (Case No. 19-cv-1146, Doc. 2 at 22); and Peltes gave her an unfavorable review and demotion on August 21, 2019. (Case No. 19-cv-1146, Doc. 2 at 23–24). As discussed above, the decisions to revoke Dunkley's overtime authorization and to demote her were made by Lloyd, not Peltes. And Dunkley has not shown that the April 26 evaluation constituted an adverse employment action that worked a "materially adverse change in the terms and conditions of employment." *Rabinovitz*, 89 F.3d at 488. Thus, no reasonable jury could find that Peltes retaliated against Dunkley in violation of Title VII.

## IV.  CONCLUSION

For these reasons, it is **ORDERED** as follows:

1.  Defendant AFSCME Local 2600's motion for summary judgment (Doc. 188) and Defendants Monroy and Peltes's motion for summary judgment (Doc. 191) are **GRANTED**.

2.  Plaintiff Dunkley's motions to strike (Docs. 210 & 212) are **DENIED**.

3.  Defendants' joint motion to strike (Doc. 215) is **DENIED**.

4.  At the close of the case, the Clerk of Court shall enter judgment in favor of Defendants AFSCME Local 2600, Monroy, and Peltes.

5.  The Clerk of Court shall **CORRECT** Defendant AFSCME Local 2600's name in the docket as directed in footnote one.

6.  The final pretrial conference currently scheduled for October 14, 2021, and the jury trial currently scheduled for October 25, 2021, are **CONTINUED**

and will be rescheduled after a status conference set for **October 19, 2021 at**

**1:00 PM** at which Plaintiff Dunkley and Defendant IDHS shall be present

to discuss a new trial date.

**SO ORDERED.**

Dated: October 5, 2021

_____
DAVID W. DUGAN
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNIFER A. DUNKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-02189-DWD |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**DUGAN, District Judge:**

## MEMORANDUM & ORDER

Plaintiff Jennifer Dunkley worked for the Illinois Department of Human Services ("IDHS") from 2015 to 2020. In 2018 and 2019, she brought claims for racial discrimination against IDHS, her labor union AFSCME Local 2600, and IDHS employees Kimberly Peltes and Monica Monroy. This Court granted motions for summary judgment (Doc. 220) in favor of all defendants but IDHS, which is the sole remaining defendant in this action. Before this Court is IDHS' Motion *in Limine* (Doc. 281). Plaintiff does not respond to IDHS' Motion.[1]

Plaintiff's Second Amended Complaint (Doc. 38) alleges that IDHS engaged in "illegal, intentional discrimination on the basis of race by perpetuating and condoning a hostile work environment based on race." (Doc. 38, ¶ 163). IDHS also allegedly "failed to take adequate remedial measures"; denied plaintiff promotional opportunities by threats,

---

[1] SDIL-LR 7.1(c) provides that the "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion."

intimidation, and negative performance evaluation; treated plaintiff "worse than similarly-situated white employees in promotion and discipline"; and retaliated against plaintiff "because she opposed discriminatory practices and participated in an EEOC proceeding." (Doc. 38, ¶¶ 165, 170-71, 175, 185). Presently, only those claims brought against IDHS under Title VII of the Civil Rights Act of 1964 survive.[2]

IDHS argues Plaintiff should not be permitted to introduce evidence that either Kimberly Peltes or Monica Monroy racially discriminated against Plaintiff, created or perpetuated a hostile work environment, or otherwise retaliated against Plaintiff. Generally, it argues that, since the Court granted summary judgment in favor of Peltes and Monroy, the doctrine of the "law of the case" should operate to bar evidence as to their alleged discriminatory conduct. More specifically, IDHS seeks to bar evidence of discrimination based upon Monroy's November 28, 2018, email; no white participant in the AG02B course being the subject of a written report by Monroy; Peltes' revocation of Plaintiff's authorization to work overtime, return of Plaintiff to 100% review, and demotion of Plaintiff; the contents of Plaintiff's April 26, 2019, performance evaluation; and Peltes' unfavorable review and demotion of Plaintiff on August 21, 2019. (Doc. 281).

IDHS argues, as noted in *Evans v. City of Chicago*, "when an issue is once litigated and decided, that should be the end of the matter." *See* 873 F.2d 1007, 1014 (7th Cir. 1989). That is an oversimplification because the doctrine of the "law of the case" is a self-imposed limitation rather than a limitation on the court's power. *Id.* at 1015 (quoting *Gertz*

---

[2] This Court dismissed claims against IDHS brought under 28 U.S.C. §§ 1981 and 1983. (Doc. 91).

*v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982)). And, unlike its cousin, *res judicata*, the doctrine of the "law of the case" is flexible, with a difference in consequences dictating, in some measure, the extent to which it is applied in a given case. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478.5 (3d ed. 2005). But, as IDHS notes, the doctrine is a presumption that prior rulings will stand unless the presumption is overcome for compelling reasons, such as new controlling law or clear error. An application of the "law of the case" principle operates to deprive a party of the opportunity to reargue a position or claim, and it should do so here.

This Court granted summary judgment in favor of both Peltes and Monroy. In that order, a determination was made that Plaintiff failed to come forward with adequate evidence and that the record, as it then existed, presented no genuine issue of fact that could support Plaintiff's claims against either Peltes or Monroy. Now, IDHS raises the concern that Plaintiff, during trial, will attempt to resurrect certain factual issues that have already been determined by the Court to be inadequate to support Plaintiff's claims of discriminatory behavior by Peltes and Monroy.[3] "Fact issues present variable opportunities for invoking law-of-the-case principles. If an attempt is made to press the same fact issue for a second time on an unchanged record, law-of-the-case reluctance [to reconsider] approaches maximum force" *Id.* And, "[t]he very determination whether an issue is a question of fact—often a subtly legal determination—may properly be treated

---

[3]The Court is not without its own concern in this regard because Plaintiff has requested the issuance of some 40 subpoenas for witnesses whose disclosed testimony is seemingly directed to the claims of discriminatory conduct on the part of Peltes or Monroy.

as the law of the case." *Id.* Of course, reconsideration of a fact issue may be appropriate, however, if there is new evidence, new law, or manifest injustice. *Id.* But, here, Plaintiff does not point to the existence of any new evidence, new law, or manifest injustice that might justify reconsideration of the Court's order granting summary judgment.

Accordingly, the Court **GRANTS** Defendant's Motion *in Limine* (Doc. 281) and bars Plaintiff from suggesting, arguing, stating or otherwise introducing, in the presence of the jury, evidence of alleged discrimination by Peltes or Monroy, including evidence of: Monroy's November 28, 2018, email; no white participant in the AG02B course being the subject of a written report by Monroy; Peltes' revocation of Plaintiff's authorization to work overtime, return of Plaintiff to 100% review, and demotion of Plaintiff; the contents of Plaintiff's April 26, 2019, performance evaluation; and Peltes' unfavorable review and demotion of Plaintiff on August 21, 2019.

    **SO ORDERED**.

    Dated:  September 12, 2022.

s/ David W. Dugan

_____

DAVID W. DUGAN
United States District Judge

Exhibit 3

# **VERDICT FORMS**

## **A. Racial Discrimination**

1.    **We, the jury, find as follows on Plaintiff's racial discrimination claim:**

   *(Place an "X" on the appropriate line.)*

   For Plaintiff          For Defendant

   _____  or  \_\_\_\_X_____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.    **We fix Plaintiff's total compensatory damages on Plaintiff's racial discrimination claim as:**

   $_____

## B. Harassment Causing a Hostile Work Environment

1. **We, the jury, find as follows on Plaintiff's claim of harassment causing a hostile work environment:**

   *(Place an "X" on the appropriate line.)*

                 For Plaintiff         For Defendant

   _____ or \_\_\_X_____

   *(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2. **We fix Plaintiff's total compensatory damages on Plaintiff's claim of harassment causing a hostile work environment as:**

   $_____

### C. Retaliation

1.      **We, the jury, find as follows on Plaintiff's retaliation claim:**

*(Place an "X" on the appropriate line.)*

For Plaintiff      For Defendant

_____ or _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.      **We fix Plaintiff's total compensatory damages on Plaintiff's retaliation claim as:**

$_____



12-13-23

Date

4

*Exhibit 4*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNIFER A. DUNKLEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No.: 3:18-cv-2189-DWD |
| | ) | |
| | ) | |
| AFSCME LOCAL 2600, ET AL, | ) | |
| | ) | |
| *Defendants.* | ) | |

### JUDGMENT IN A CIVIL ACTION

**DUGAN, District Judge:**

**IT IS ORDERED AND ADJUDGED** that pursuant to the jury verdict rendered on

June 8, 2023, the Court enters Judgment in favor of Defendant Illinois Department of Human

Services and against Plaintiff Jennifer Dunkley as to all claims.

Pursuant to the Order entered on October 5, 2021 (Doc. 220), Judgment is entered in

favor of Defendants AFSCME Local 2600, Monroy and Peltes.

Accordingly, this case is closed.

**IT IS SO ORDERED.**

**DATED: June 8, 2023**

**MONICA A. STUMP, Clerk of Court**

*s/ Dana M. Winkeler*
**Deputy Clerk**

Approved: *s/ David W. Dugan*
David W. Dugan, U.S. District Judge

Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNIFER A. DUNKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-02189-DWD |
| | ) | |
| LOCAL 2600 AFSCME, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PROPOSED JURY VERDICT FORMS</u>

**VERDICT FORM**

### A.    Discrimination

1.    **We, the jury, find as follows on Plaintiff's discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

For Plaintiff       For Defendant

_____ or _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.    **We fix Plaintiff's total compensatory damages on Plaintiff's discrimination claims as:**

$_____

### B.     Hostile Work Environment

**1.     We, the jury, find as follows on Plaintiff's hostile work environment claim:**

*(Place an "X" on the appropriate line for each claim.)*

                                           For Plaintiff           For Defendant

_____ or _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.     We fix Plaintiff's total compensatory damages on Plaintiff's hostile work environment claim as:**

$_____

## C.    Harassment

**1.     We, the jury, find as follows on Plaintiff's Harassment claim:**

*(Place an "X" on the appropriate line for each claim.)*

|                                          | For Plaintiff |    | For Defendant |
|------------------------------------------|---------------|----|---------------|
| Illinois Department of Human Services    | _____ | or | _____ |

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.     We fix Plaintiff's total compensatory damages on Plaintiff's harassment claim as:**

$ _____

4

**D.    Disparate Treatment**

**1.   We, the jury, find as follows on Plaintiff's Disparate Treatment claim:**

*(Place an "X" on the appropriate line for each claim.)*

For Plaintiff              For Defendant

_____    or    _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.      We fix Plaintiff's total compensatory damages on Plaintiff's disparate treatment claim as:**

$_____

### E.     Intentional Discrimination

**1.     We, the jury, find as follows on Plaintiff's intentional discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

|  | For Plaintiff | For Defendant |
|---|---|---|
| Illinois Department of Human Services | _____ or | _____ |

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.     We fix Plaintiff's total compensatory damages on Plaintiff's intentional discrimination claims as:**

$_____

## F.     Retaliation

**1.**     **We, the jury, find as follows on Plaintiff's discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

                                  For Plaintiff        For Defendant

Illinois Department of Human Services    _____   or   _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.**     **We fix Plaintiff's total compensatory damages on Plaintiff's retaliation claims as**

       $_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JENNIFER A. DUNKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-02189-DWD |
| | ) | |
| LOCAL 2600 AFSCME, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PROPOSED JURY VERDICT FORMS</u>

**VERDICT FORM**

A.      **Discrimination**

1.      **We, the jury, find as follows on Plaintiff's discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

For Plaintiff              For Defendant

_____  or  _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.      **We fix Plaintiff's total compensatory damages on Plaintiff's discrimination claims as:**

$_____

### B.     Hostile Work Environment

**1.     We, the jury, find as follows on Plaintiff's hostile work environment claim:**

*(Place an "X" on the appropriate line for each claim.)*

For Plaintiff                    For Defendant

_____  or  _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.     We fix Plaintiff's total compensatory damages on Plaintiff's hostile work environment claim as:**

$_____

**C.    Harassment**

1.    **We, the jury, find as follows on Plaintiff's Harassment claim:**

*(Place an "X" on the appropriate line for each claim.)*

|  | For Plaintiff | For Defendant |
|---|---|---|
| Illinois Department of Human Services | _____ or | _____ |

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.    **We fix Plaintiff's total compensatory damages on Plaintiff's harassment claim as:**

$ _____

### D.    Disparate Treatment

**1. We, the jury, find as follows on Plaintiff's Disparate Treatment claim:**

*(Place an "X" on the appropriate line for each claim.)*

                      For Plaintiff         For Defendant

_____ or _____

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.    We fix Plaintiff's total compensatory damages on Plaintiff's disparate treatment claim as:**

     $_____

### E.    Intentional Discrimination

**1.    We, the jury, find as follows on Plaintiff's intentional discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

|                                          | For Plaintiff | | For Defendant |
|------------------------------------------|---------------|--|---------------|
| Illinois Department of Human Services    | _____ | or | _____ |

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

**2.    We fix Plaintiff's total compensatory damages on Plaintiff's intentional discrimination claims as:**

$_____

6

### F.    Retaliation

1.    **We, the jury, find as follows on Plaintiff's discrimination claim:**

*(Place an "X" on the appropriate line for each claim.)*

|                                          | For Plaintiff            | For Defendant            |
| ---------------------------------------- | ------------------------ | ------------------------ |
| Illinois Department of Human Services    | _____ or       | _____        |

*(If you found against the Defendant on this claim, fill in below the total amount of compensatory damages you award. If you found for the Defendant on this claim, skip part 2 of this section because you will not award damages on this claim.)*

2.    **We fix Plaintiff's total compensatory damages on Plaintiff's retaliation claims as**

$ \$_____ $

Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JENNIFER A. DUNKLEY,       )
                                  )
       Plaintiff,          )
                                  )
     v.                  )      No. 3:18-cv-02189-DWD
                                  )
LOCAL 2600 AFSCME, et al.,      )
                                  )
       Defendants.     )

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF BCA INVESTIGATIVE REPORT & BCA LETTERS CONCERNING ITS INVESIGATION

The Defendant, ILLINOIS DEPARTMENT OF HUMAN SERVICES ("IDHS"), moves for an order *in limine* to exclude evidence of the IDHS Bureau of Civil Affairs Investigative Report and Recommendation and letters concerning its investigation.

In support of this motion, Defendants provide the following:

### Introduction

Plaintiff filed her Complaint in Case No. 19-1146 (subsequently consolidated with Case No. 18-2189 (Doc. 76)) bringing six claims against the Illinois Department of Human Services ("IDHS"), and two of its employees, of race discrimination, hostile work environment based on Plaintiff's race; harassment and disparate treatment intensifying a hostile work environment; disparate treatment based on race; intentional discrimination based on race; and retaliation for Plaintiff's complaints of discrimination. (Doc. 158).

During the course of discovery, an investigative report and recommendation a of IDHS's Bureau of Civil Affairs ("BCA") and letters BCA concerning its report were submitted to Plaintiff. This report and recommendation was the result of an investigation conducted after Plaintiff made internal complaints to IDHS of racial discrimination. The 14-page report, which Plaintiff has

marked as Plaintiff's Exhibit No. 29, contains summary and witness interviews compiled during the investigation. Plaintiff has also marked as exhibits letters from BCA concerning its investigation as Plaintiff's Exhibit Nos. 1 and 20. The condition of the report is that Plaintiff's allegation of discrimination was unfounded and her allegations of harassment and relation were founded. The report recommended prior discipline initiated by Plaintiff's supervisor, Patricia Herker, be removed from Plaintiff's records, that Herker attend anti-discrimination and anti-harassment training and that Plaintiff be allowed to relocate to another Family Community Resource Center in a position equivalent to that which she lost due to her discipline. The letters indicated there may have been a violation of Federal and/or State Law or IDHS policy related to discrimination, harassment and retaliation.

Because the report and investigation and letters contain hearsay and conclusions of the investigators that are not admissible at trial, the report should not be admitted as evidence.

## **Argument**

It is up to the court to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a). To the extent Plaintiff seeks to introduce the BCA investigative findings, report and recommendation, and the BCA letters, she should be precluded from offering it into evidence.

The investigative report contains findings and conclusions that lend no factual support to this suit and merely confuse the issues. Since the parties are capable of testifying to what they know and what happened, the investigation would be unnecessary for the fact-finder to render its judgment. Though Defendants admit that portions of the report may be relevant to the suit and used for proper purposes, the report's findings of the investigation  and other hearsay documents should not be offered into evidence by the Plaintiff.

In addition, Plaintiff has indicated that she wishes to call The BCA Investigator, Taqiyyah

Shakur, and Kimberly Foy, Taqiyya's supervisor, as well Ganapathi Ramaswamy, the head of

BCA at the relevant times. Their testimony should not be offered in the Plaintiff's case-in-chief to

testify as to what they found during BCA investigation. They do not have first-hand knowledge of

what occurred at the Montgomery County Family Community Resource Center between Plaintiff

and her supervisor. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is

introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Their knowledge is based solely on the investigation and they would not be competent to testify

as to what actually happened.

Plaintiff is attempting to use her own allegations to BCA to prove the truth of the matters

asserted. Further, the committe notes to former FRE 803(8)(c) are instructive. The notes for Rule

803(8) provide:

> The Committee approved Rule 803(8) without substantive change from the form
> in which it was submitted by the Court. The Committee intends that the phrase
> "factual findings" be strictly construed and that evaluations or opinions contained
> in public reports shall not be admissible under this Rule.

USCS Fed. Rules Evidence R. 803. In this case, the letters Plaintiff intends to introduce from BCA

do not contain "factual findings," but rather a general opinion that there may have been a violation.

The report too lacks sufficient factual findings and it is clear Plaintiff is merely using it for the

overall opinion that two of her allegations were substantiated.

The BCA report is prejudicial. Admitting it into evidence could create a risk that the jury

would accept its conclusions. *See* e.g., *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 442 (7th

Cir. 2009) (noting the district court did not abuse its discretion in excluding both the EEOC

decision and the employer's internal investigation where the district court judge found admitting either would create a substantial risk that the jurors would adopt the earlier conclusions),

Accordingly, Defendant request that this Court bar Plaintiff from offering evidence concerning the BCA investigative findings and the testimony of the investigators who assisted in investigating Plaintiff's allegations.

Respectfully submitted,

ILLINOIS DEPARTMENT OF HUMAN SERVICES,

Defendant,

KWAME RAOUL, Attorney General, State of Illinois

Thomas Ewick, #6279084
Salena R. Young, #6279523
Robert Hogue, #6318000
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
Phone: (217) 785-4555
Fax: (217) 524-5091
Email: Thomas.Ewick@ilag.gov
       Salena.young@ilag.gov
       Robert.hogue@ilag.gov

Attorney for Defendant,

By: /s/ Thomas Ewick
    Thomas Ewick, AAG

*Dunkley v. AFSCME et al.*

USDC SD IL No. 3:18-cv-02189-DWD

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2023, the foregoing document, **Defendant's motion *in limine* to exclude evidence of BCA investigative report & BCA letters concerning its investigation**, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

| | |
|---|---|
| Melissa Auerbach | efile@laboradvocates.com |
| Maria D. Gray | maria.gray@ilag.gov |
| Megan Ann Ditzler | megan.ditzler@ilag.gov |
| Robert Hogue III | Robert.hogue@ilag.gov |
| Salena R. Young | Salena.young.@ilag.gov |

and I hereby certify that on the same date, I caused a copy of same to emailed as well to the

following participant:

Jennifer A. Dunkley
108 S Spruce Street
Greenville, IL 62246
Jennifer.Dunkley@gmail.com

Respectfully submitted,

 s/Thomas Ewick
Thomas Ewick, #6279084
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 785-4555 Phone
Thomas.Ewick@ilag.gov

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF ILLINOIS

*Exhibit 7*

**Jennifer A. Dunkley, Plaintiff,**

**v.**

**AFSCME Local 2600, et al., Defendant,**

**Case No. 3:18-CV-2189-DWD**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**

## BACKGROUND

1. Plaintiff Jennifer Dunkley was employed by the Illinois Department of Human Services, where she has served as a Public Aid Eligibility Assistant in Montgomery County and Marion County, Illinois. She has also served as Social Services Career Trainee at the Family Community Resource Center in East Alton, Madison County, Illinois.

2. On December 19, 2018, Plaintiff filed her complaint in case No. 18-2189 alleging AFSCME Local 2600 and the Illinois Department of Human Services engaged in racial discrimination against her.

3. On October 22, 2019, Plaintiff filed another Complaint in Case No. 19-1146 alleging Illinois Department of Human Services and two of its employees, Defendants Peltes and Monica Monroy, engaged in racial discrimination; perpetuated and condoned a hostile work environment based on her race; engaged in harassment and disparate treatment; intentionally discriminated against her due to her race; and engaged in retaliatory practices when she filed racial discrimination complaints.

4. On February 25, 2020 Illinois Department of Human Services filed a motion to consolidate case No. 19-1146 and case No. 18-2189. On May 27, 2020 the court granted Illinois Department of Human Services motion to consolidate the two complaints filed by plaintiff, Jennifer Dunkley.

5. On April 19, 2023 A Final Pretrial Conference was held. The Jury Trial was reset to 6/5/2023 at 9:00 AM in the East St. Louis Courthouse before Judge David W. Dugan.

6. On June 1, 2023 the court ordered each party is TO SHOW CAUSE, on or before Monday, June 5, 2023, at 9:00 a.m., as to whether Plaintiff's claim(s) for punitive damages should be stricken and the evidence related thereto barred from the upcoming trial.

7. On April 19, 2023 A Final Pretrial Conference was held. The Jury Trial was reset to 6/5/2023 at 9:00 AM in the East St. Louis Courthouse before Judge David W. Dugan.

8. On Sunday, June 4, 2023 Defendant, Illinois Department of Human Services filed Defendant's Motions in Limine.

## ARGUMENT

Plaintiff, Jennifer Dunkley opposes Defendant, Illinois Department of Human Services motion to to exclude evidence of the DHS Bureau of Civil Affairs Investigative Report and Recommendation and letters concerning its investigation.

## 1. CASE MANAGEMENT PROCEDURES, Judge David W. Dugan

In most instances, Judge Dugan will set a deadline for filing all motions in limine. However, in those instances where no deadline is set, motions in limine must be filed no later than ten calendar days before trial. Responses to motions in limine must be filed within seven days after service of the motion. Untimely motions may be denied or stricken, particularly if their consideration would delay trial.

## 2. The Defendant's Motion in Limine is untimely and prejudices the plaintiff.

This court had previously set May 31, 2023 as the last day for parties to file motions in limine. The plaintiff was unfairly surprised by the defendant's decision to file a motion in limine on a Sunday, June 4, 2023, less than 24 hours before the start of the trial. This motion in limine will prejudice the plaintiff.

## 3. Motions in limine, must be accompanied by appropriate supporting documents.

Defendant, Illinois Department of Human Services did not provide factual support by way of declaration or affidavit. Without appropriate factual showing to support the motion, the court should not entertain the motion.

**4. The Defendant has agreed in the "Amended Joint Stipulation" to this evidence being presented in court.**

An Amended Joint Stipulation was signed by the parties and filed in this court on April 17, 2023. (No.356) (Exhibit 1)

      For these reasons, Plaintiff, Jennifer Dunkley's evidence concerning the BCA investigative findings and the testimony of the investigators and witnesses  who assisted in investigating Plaintiff's allegations are admissible and the Defendant's motion should be denied.

This misuse and abuse of motions in limine by Defendant, Illinois Department of Human Services could result in the denial of due process for the plaintiff.

      WHEREFORE, for the foregoing reasons, Plaintiff, Jennifer Dunkley, respectfully requests this honorable Court enter an order denying Defendant's Motions in Limine.

Sincerely,

*Jennifer Dunkley*

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246

June 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I filed the foregoing with the Clerk of the Court

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE I hereby further certify that on June 5, 2023, I mailed by United States Postal Service the same document to the following registered participants:

Megan Ann Ditzler
Office of the Attorney General-Springfield
500 South Second Street
Springfield, IL 62701
217-782-1841
Fax: 217-782-8767
Email: Megan.Ditzler@ilag.gov

Maria D. Gray
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62701
217-782-5819
Fax: 217-524-5091
Email: Maria.Gray@ilag.gov


Robert Hogue , III
Illinois Attorney General's Office
500 S. 2nd Street
Springfield, IL 62701
217-782-5819
Email: robert.hogue@ilag.gov

Salena Young
Office of the Attorney General-Springfield
500 South Second Street
Springfield, IL 62701
217-782-1841
Email: salena.young@ilag.gov

Thomas R. Ewick
Assistant Attorney General, General Law Bureau
Office of the Illinois Attorney General
500 S. Second Street
Springfield, Illinois 62701
217-782-9026 (office)
217-843-0330 (cell)
Email: Thomas.Ewick@ilag.gov

Melissa J. Auerbach, Lead Counsel ARDC No. 3126792
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue, 19 Floor
Chicago, Illinois 60603
Email: mauerbach@laboradvocates.com

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618)616-8708

Jennifer Dunkley, Plaintiff

*Jennifer Dunkley*

Dated: June 9, 2023

Exhibit 8

You will recall that during the course of this trial, the Court admitted certain evidence concerning complaints Plaintiff made to the Illinois Department of Human Services' Bureau of Civil Affairs and the findings and recommendations of the Bureau of Civil Affairs. You may consider this evidence only for the limited purpose of establishing the fact that Plaintiff made certain complaints to the Bureau of Civil Affairs and the Bureau made certain findings and recommendations and not for the truth of the statements made within Plaintiff's complaints.

Defendant's No. 35
7th Cir. P. I. No. 1.09 (modified)

Given _____
Given as Modified _____
Refused _____
Withdrawn _____



STATE OF ILLINOIS
DEPARTMENT OF HUMAN SERVICES
BUREAU OF CIVIL AFFAIRS

**INVESTIGATION REPORT AND RECOMMENDATION**
(Confidential*)

I.  **CHARGE#:**0617R0701E, 1118R0701E and 1118R0702E

II.  **REPORT DATE:** October 2, 2017

III.  **INVESTIGATOR OF RECORD (IR):** Taqiyyah Shakur

IV.  **COMPLAINANT (CP):** Jennifer Dunkley

V.  **RESPONDENT (RP):** Patricia Herker

VI.  **DATE COMPLAINT FILED:** June 8, 2017 and November 14 & 16, 2017.

VII.  **DATE OF ALLEGED VIOLATION:** April 2017, May 10, 2017, September 11 & 14, 2017 and continuing

VIII.  **JURISDICTION:**   Yes

Complainant alleges a claim of activity prohibited by the Illinois Human Rights Act, Title VII of the Civil Rights Act, the Americans with Disabilities Act of 1990, the Age Discrimination Act of 1975, the Rehabilitation Act Amendments of 1986, or the Education Amendments of 1972 as set out below and the complaint was filed within 30 days of the alleged statutory violation. Therefore, the Department of Human Services, Bureau of Civil Affairs, has jurisdiction over this matter.

IX.  **INVESTIGATION PROTOCOL:** *N/A* (For Special Investigations Only)

X.  **WORK LOCATION:**   Montgomery County Family and Community Resource Center

XI.  **BASES:** Race, Color, National Origin

XII.  **ISSUES:** Discrimination, Harassment, Complainant amended her charge to include Retaliation on 7/13/17. Complainant filed two additional cases in November 2017 and both are added to this case report.

**XIII.  ALLEGATIONS:**

1) Complainant alleges she is being discriminated against in her position of PAEA because of her race, color, and national origin. The Complainant states that she is Black, her skin color is Brown, and her national origin is Jamaican (See Attachment C).

2) She asserts her work and her breaks are scrutinized closer than her co-workers' and she is receiving excessive emails from Respondent. Complainant provided documentation which showed that often Respondent would address Ms. Dunkley with larger fonts when corresponding; which are indicative of screaming. See example below:

*In compliance with all applicable State and federal laws, this report is not to be shared with any other



Charge Number 0617R0701E

*IDHS staff. No information related to this case is to be filed in the personnel or work file of any employee.*

217532588                FAX                                    08:17:54 a.m.     06-06-2017        29 /40

On 5/12/2017 I sent you an e-mail regarding a LINK card that had not been issued yet. The customer was issued expedited and the date of the LINK form 3658 was dated 5/6/2017. On 5/11/2017 the 3658 was pulled out of the LINK folder and was placed in your mailbox to issue. You were asked to make sure LINK cards are issued timely as these customers have been issued expedited snap and therefore it needs to be issued in a timely manner. The response I received is it is not true and that all LINK cards had been issued before leaving on 5/11/2017. The 3658 was pulled from the folder on 5/11/2017 as it should have been issued on 5/8/2017 and mailed to the customer as requested. Again the response I get is that is was not there and Thanks! This is not the first time that you have had to be told to make sure LINK cards were issued timely.

It is your responsibility to maintain the LINK folder and issue LINK cards in a timely manner everyday. I don't expect to be talked back to when I ask for something to be done. When I e-mail you it is for instructions and responsibilities and responses are to be worded in a way that you are not sound insubordinate.

*Patty Weiler* 5/15/17

*Jennifer Dunkley* 5/15/17

Page 2 of 14

Dunkley v. AFSCME et al. (18-2189) Document No.:     001486



3) She contends she is treated differently than previous employees in her position because she receives different duties and rules change for her assignments.

4) She further contends she has been retaliated against since she filed her discrimination complaint. Complainant filed an additional charge of retaliation, # 1118R0701E, dated 11/14/17.

This complaint involves a previously approved time off request, which was later denied. Complainant also filed a complaint on November 16, 2017 alleging she was denied a promotion to the Social Services Career Trainee (SSCT) position on September 11, 2017.

## XIV. EVIDENCE:

**Uncontested Facts:**

- Complainant, Jennifer Dunkley, is a Public Aid Eligibility Assistant (PAEA) in the Montgomery County Family and Community Resource Center (FCRC)

- Respondent, Patricia Herker, is a Supervisor in the Montgomery County Family and Community Resource Center (FCRC)

- Complainant began working for the State of Illinois in September 2015

- The Respondent began working in the Montgomery County FCRC in January 2013

- Respondent began supervisory duties at Montgomery County FCRC in April 2017.

**Complainant's Position and Interview Responses:**

**Complainant, Jennifer Dunkley (Black, Brown, Jamaican),** states she is being discriminated against by her supervisor Patricia Herker, Respondent (White, American). Complainant asserts she has spoken out against her former supervisor, Janet Swartz to Human Resources, Kerri Brockmeyer, regarding discrimination. She asserts that the Respondent is a friend of Ms. Swartz.

Ms. Dunkley notes that she is also harassed in a manner that is different than how other staff are treated in the Montgomery County FCRC. She contends she is the only black employee in the office and is more closely monitored than her white counterparts by Respondent. Ms. Dunkley believes this is because of her race (black), skin color (brown), and national origin of Jamaican.

The Complainant states she is being harassed by the number of emails she receives daily. She notes that she has received multiple unwarranted and disparate disciplines. She also notes that she is asked to perform duties that are not within her job description but are in the job description of or have been identified as required duties of other employees in the office. She states her evaluations have been changed and other employees in her office have not been evaluated. Ms. Dunkley complained that although she was the most senior staff in her office when she applied for the position of Social Services Career Trainee (SSCT), she did not

Page 3 of 14



receive an offer for the position. The position was given to Christine Meyer (White, USA).

Regarding her retaliation allegation, she says the discipline began after she expressed her belief of discriminatory actions against her and informed Kerri Brockmeyer in the Office of Human Resources of this. Complainant further alleges she was retaliated against when she requested and was approved for time off, then later denied the same time off by Respondent. Complainant filed another internal complaint to address this issue.

Complainant alleges she sent an email on 9/12/17 to her Supervisor and the Local Office Administrator (LOA), stating that she left a Time Off Request (4140) on her desk requesting some time off on 9/14/17. She states she was never informed that the request was denied. She says she did not discover that it wasn't approved until she received her Monthly Attendance Report and she questioned the unexcused absence. She alleges she asked the reason for the denial and the LOA's response was "Operational Needs". Complainant expressed disbelief and explained that her request was only for 3.20 hours off and the other front desk worker was present to cover that time frame. Ms. Dunkley states she has to draft several requests for time off because, Respondent states she does not receive them. She notes she frequently had to submit the documentation to the timekeeper as well. Ms. Dunkley did present documentation where this happened once.

**Respondent's Rebuttal and Interview Responses:**

**Respondent, Patricia Herker (White, Caucasian, American),** states she is a Human Services Casework Manager and has held this position since April 2017. Ms. Herker states she has taken disciplinary action against Ms. Dunkley. Ms. Herker agrees that Ms. Dunkley is the only minority employee in the office and the only Public Aid Eligibility Assistant in the office as well. She explained that her staff is comprised of 10 full-time staff and 2 contractual workers.

Ms. Herker points to communication as the biggest problem with Ms. Dunkley. She states that when Ms. Dunkley does respond to her e-mails, she is very insubordinate. However, Ms. Herker states that Ms. Dunkley as a practice does not speak to her at all. She notes that she rarely takes lunch at her assigned time; which is from 1:00 pm until 2:00 pm. Ms. Herker did state there were other staff that had times assigned for their lunch. Ms. Herker stated that only Ms. Dunkley was required to inform management if she took a lunch break outside of her designated lunch hour. Others did not receive this instruction,because Ms. Herker explained that if the other staff are running late, they do "stop in and say what the issue is". Ms. Herker states there are other staff that she monitors and named Shauna Horn, Kathy Brookshire, and Elizabeth Lusk. All other staff mentioned are in training. Regarding the issue of evaluations that were due for other staff and not done, Ms. Herker notes that those staff are in training and would be evaluated after they were ready for certification. She did not mention any certified staff that was due for evaluation. Ms. Herker went on to state Ms. Dunkley does not take ownership of her mistakes and is not a team player. Ms. Herker answered in an e-mail to Ms. Dunkley why she did not excuse her absence, it was because of operational needs.

**Witness Interview Responses:**

**Lisa Eden (Caucasian, White, American)** -states she is a union steward and has worked with

Page 4 of 14



Ms. Dunkley in her grievances. According to Ms. Eden, there has been an offer made to transfer Ms. Dunkley to another location. She notes she is also attempting to reduce the time Ms. Dunkley has received in discipline.

**Richard Starr (Caucasian, White, American)** - Is a Labor Relations Specialist that services the Montgomery County FCRC. He states in an e-mail that the move for Ms. Dunkley has been approved. However, Ms. Dunkley has grievances that must be heard and time that may be adjusted before Ms. Dunkley can be moved.

**Deanna Bandy ( Caucasian, White, American)** - Human Resources Supervisor- States Ms. Dunkley had too much discipline and discipline pending to be offered the position of SSCT.

**The following is a report from Staff Development Specialist Barett Sheeley regarding his two- day training with Ms. Dunkley:**

(""dt.l.y,

I know it was a whirlwind while I was there, and I hope it was of some benefit. There were some items I got to speak to you on, and same that we did not have time to discuss. The review attached Is more of a factual nature, but I wanted to ; share some areas that you may want to brainstorm on, and upon review possibly make changes, or you may want to leave them as they are.

1. With Jennifer's actual physical location, and the placement of her desk and inboxes and monitors and CPU, she does not have much open space on her desk in which to place items she is reviewing. An example of this would be a 2378B that she is reviewing while registering. In most situations the employee would recognize this and move items around to make the best possible workspace for themselves. From my brief time with Jennifer, I don't know if she understands this is a problem, or has a desire to take initiative an a project like this an her own. Also, with the placement of her monitors and desk, when people come up to the window they can see what she is working on. An idea might be to place her desk similarly to how the Clerical's desk is aligned on the wall. Unfortunately, there Is a door this might partially block. I don't have a perfect solution for this, but it migh· be something to review.

2. I never could get a clear sense from Jennifer on her specific duties/role in answering phones. It seemed like the Clerical had the incoming calls, and then if the Clerical wasn't available the PAEA (Jennifer) would attempt to pick up? From my brief experience with Jennifer her ability or willingness to multi-task does not seem high. I'm not sure if there is a different way to structure your phone calls coming in, but with the current structure Jennifer does not seem to be able to provide good customer service. There were multiple times where she took calls, did not log the on the new OneNet log, and by the time she got to contacting a HSC about whatever the client had called on, *she* did not have adequate notes to be able to determine what the client wanted. I'm sorry once again, I don't have a clear idea of what would be best here, but it may be an area to speak with some othe people and get ideas, there are a lot of creative and resourceful people as managers in the region,

3. You may have systems in place to track specific items that the PAEA would be working on, but it seemed that a lot of items were just being placed directly into Jennifer's inbox. It might be useful to have some sort of system, such as folders, where items that need action are separated and at a simple glance you can tell or other worker: can tell if an area needs to be caught up, An idea might be to have folders for 23788', 683/1893's need registered, Link needs issued. Having these centralized and out in the open might allow better tracking of work. If the PAEA involved was organizing her work well, and staying on top of things this might not be necessary, be it might be an idea on how to help manage the current situation.

'thank you for everything, and I hope the information attached is helpful. With our new SDS' regional training plan, ,please contact Julie requests for specific training as needed. Just a heads up, I know I will be unavailable until probably after 7/22/17.

Dunkley v. AFSCME et al. (18-2189) Document No.:    001489



W. Barrett
Sheeley Morgan
FCRC
Staff Development Specialist

**Summaries of Documents Reviewed:**

    **Attachment A. Complaint** (Summary of allegations);

    **Attachment B. Information forwarded by Complainant** (E-mails, evaluations, oral reprimands etc);

    **Attachment C. Complainant personnel inquiry** (Discipline and time in service information);

    **Attachment D. Personnel file;** (Information sent by Complainant to corroborate allegations).

    **Attachment E- Job descriptions and discipline for non-compliance in other duties**

    **Attachment F- Staff Development Specialist write-up of training.**

    **Attachment G- Grievance** (Denial of training and assigning Office Associate tasks

    **Attachment H- Lunch break e-mails**

    **Attachment I - Comparative exchanges and inquiries**

    **Attachment J- Respondent request for replacement 4140.**

    **Attachment K-Request to add Retaliation Complaint**

    **Attachment L- Rebuttal to June discipline**

    **Attachment M- Large font responses – Not found in any**

    **emails to other staff.**

## XV.   DISCUSSION:

To demonstrate a violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 et seq., or Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2 for unlawful employment-based discrimination, a complainant must provide evidence that would permit a reasonable factfinder to conclude that the plaintiffs race, ethnicity, sex, religion, or other proscribed factor caused an adverse employment action. The evidence must be considered as a whole, with all relevant evidence considered and irrelevant evidence disregarded. Ortiz *v. Werner Enterprises, Inc.*, 834 F.3d

Case: 23-2215    Document: 8    Filed: 06/27/2023    Pages: 110



760, 765 (7th Cir. 2016); *Zaderaka v. Ill. Human Rights Comm'n.* 131 Ill. 2d 172, 178 (1989) (applying Title VII analyses to claims under the Illinois Human Rights Act).

Title VII of the Civil Rights Act of 1990 makes it unlawful to discriminate in employment on the basis of a person's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. The federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., and Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., add to this list discrimination on the basis of age or disability, and the Illinois Human Rights Act makes it unlawful to discriminate on the basis of a person's ancestry, age, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service. 775 ILCS 5/1-103(Q), 5/2-102(A).

**Allegation 1) - Complainant alleges she is being discriminated against in her position of PAEA because of her race, Black, color, Brown, and national origin, Jamaican.**

In this case, the Complainant alleges the Illinois Department of Human Services' employee, Patricia Herker, discriminated against her because of her race, color, and national origin.

She alleges she is the only black staff person in her office and this was confirmed by Respondent. Ms. Herker states she supervises ten staff and two contractual workers and Ms. Dunkley is the only staff person that is black and not of American origin. Her position of Public Assistance Eligibility Associate is the only position of its kind in the office. Respondent, Patricia Herker, acknowledges her friend, Janet Swartz, had issues with Complainant, but suggested Ms. Swartz screamed at everyone. Respondent contends that it is not race, but communication that is the problem between her and Ms. Dunkley. Ms. Dunkley began working for IDHS in 2015 and had received no discipline until Ms. Herker became her supervisor. Ms. Dunkley was placed with a Staff Development Specialist (SDS), W. Barrett Sheeley, on 5/17/17 and 5/19/17. Mr. Sheeley gave suggestions that were meant to give some clarity and advice to Ms. Herker to assist Ms. Dunkley in the performance of her job. It does not appear that these suggestions were adhered to because there was no mention by Complainant or Respondent that changes were implemented in the way Ms. Dunkley was doing her job. In Ms. Dunkley's complaint, she states she was not provided reading material which could have assisted her in learning her position. She said when the Office Assistant was hired, she was given a white folder which did assist her in her position. Mr. Sheeley did note that he gave folders and suggested reading material for Ms. Dunkley while he spent time with her. However, Ms. Dunkley began receiving discipline soon after her time with Mr. Sheeley. This did not appear to be the type of treatment others received. At least one staff person was promoted before her first evaluation.

**Allegation 2) -Complainant states she believes her work is scrutinized closer than the work of others in the office and her breaks are scrutinized.**

Ms. Herker began her supervision of Ms. Dunkley in April 2017. Ms. Dunkley has stated that her supervisor asked her union steward go through her desk and her garbage, but this was not verified. Respondent, Patricia Herker, did state she found cases that Ms. Dunkley was holding and had a discussion with her concerning that and disciplined her about it. Further, Ms. Herker confirmed she had issued an evaluation to Ms. Dunkley and not to others. She noted

Dunkley v. AFSCME et al. (18-2189) Document No.:    001491

PLAINTIFF'S
EXHIBIT
___ 29
PG 8

that the ones she had yet to do were new employees. Ms. Dunkley alleges that she receives a large amount of emails and others in her office do not. The documentation provided by Complainant has July 2017 as the beginning of the e-mails that Complainant states were excessive and disparate. The investigator received emails from Ms. Dunkley for the month of July 2017. Respondent was asked to give e-mails as comparatives for the month of July. She did so.

Regarding her job duties, there were approximately 28 email exchanges. An exchange is considered statements back and forth between Ms. Dunkley and Ms. Herker. The investigation found there were thirteen exchanges on e-mail that dealt with Ms. Dunkley's lunch breaks. Several were pointing to how many minutes she was not complying with Ms. Herker's expected time frames for Ms. Dunkley. The total emails sent to Ms. Dunkley from Ms. Herker for the month was 51.

With respect to the amount of e-mails submitted by Respondent for the month of July, there were 31 group e-mails; Janelle Clemens received one; Catherine Brookshire received seven; Shauna Horn received nineteen; Becky McGill receive one; Roberta Meyer received seventeen; Christine Meyer received thirty-one; Teri Powell received seven; and April Sneedon received six. Ms. Dunkley could show an excessive amount of emails were received by her from her supervisor. In the e-mails there were two instances where Ms. Herker was asked to compliment her staff on a job well done and Ms. Dunkley was not included on them. There were other e-mails that gave instruction and said include staff and Ms. Dunkley was included.

When other evaluations completed by Ms. Herker were requested from Personnel, for the year 2017, it was found that there were only two evaluations done by Ms. Herker during this time period. One was at the end of the probationary period for Catherine Brookshire, as required. Ms. Brookshire was promoted 9/01/16. The only certified employee to be evaluated during this period, was Ms. Dunkley; which is alleged in Ms. Dunkley's complaint. Ms. Dunkley actually received an interim evaluation done in May 2017, where all in the Supervisor Appraisal section were marked Needs Improvement. This was the same for the annual evaluation that was completed on September 15, 2017. Documentation from Human Resources shows that evaluations were past due for Becky McGill and Terri Romero. Ms. McGill had one that was due in August of 2016 and one in August of 2017, neither had been completed. Ms. Romero had one due in May of 2016 and one in May of 2017. One was completed on October 5, 2017 for Ms. Romero after the two that were completed on Ms. Dunkley, one in May 2017 and the other September 2017, and after this investigator had inquired about the discrepancies.

Additionally, she notes that she applied for a Social Services Career Trainee position in her office and she was denied the position. DHS Personnel states she was not chosen because of the discipline against her. DHS Human Resources state that the union contract allows for staff with less seniority to be chosen over those with greater seniority if they are "demonstrably superior" to the other staff person. The individual chosen for the position was very new to the staff, so that raised the question of whether that person could be "demonstrably superior" to Complainant for the position.

Dunkley v. AFSCME et al. (18-2189) Document No.:          001492


PLAINTIFF'S EXHIBIT
29

**Allegation 3) She contends rules change for any assignment that is given to her and she is given duties that others in her position did not have.**

Complainant states she is the only Public Aid Eligibility Assistant (PAEA) in the Montgomery FCRC. However, she states she is also doing the job of the Office Assistant and training new staff at the office. This investigation found that the primary duties of the PAEA and the Office Associate are not the same. See below:

Dunkley v. AFSCME et al. (18-2189) Document No.:     001493

PLAINTIFF'S EXHIBIT
29
pg 10



# CMS

ILLINOIS DEPARTMENT OF
CENTRAL MANAGEMENT SERVICES

**POSITION DESCRIPTION**

| 1. POSITION TITLE | | WORKING TITLE (IF ANY) | INITIAL CODE | POSITION UPPER CODE | 2. POSITION NUMBER | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Existing Position | | | | | | | | | | |
| New/Revised Position | | | | | | | | | | |
| Public Aid Eligibility Assistant | | | | | 35825-10-94-076-00-01 | | | | | |
| 3. AGENCY | | 4. BUREAU/ DIVISION | | | 8 SDGT CODE | 9 WORK COUNTY | T AN AUTH | 8ARGB | R OFHCE USE | |
| Existing Position | | | | | | | | | | |
| New/Revised Position | | | | | | | | | | |
| Department of Human Services | | Family & Community Services | | | 0 | 068 | Y | R | | |
| 10. SECTION | | 11. UNIT | | | 12. TRANSACTION CODE | | 13. EFFECTIVE DATE | | | |
| Existing Position | | | | | | | | | | |
| New/Revised Position | | | | | | | 02/16/16 | | | |
| Region 4 | | Intake | | | | | | | | |
| 14. WORK LOCATION | | 16. BARGAINING/TERM CODE | | Exempt Non Exempt | | | | | | |
| Existing Position | | | | | | | | | | |
| New/Revised Position | | | | | | | | | | |
| Montgomery Office, Montgomery County | | RC028 | | N | | | | | | |

☐ M0021 ESTABLISH
☐ M0022 EXEMPT CODE CHANGE
☐ M0024 POSITION NUMBER CHANGE
☒ M0026 CLARIFY
☐ M0027 ADDITIONAL IDENTICAL CHANGE
☐ M0029 WORK COUNTY CHANGE
☐ M0021 ABOLISH
☐ M0149 DOWNWARD REALLOCATION
☐ M0159 LATERAL REALLOCATION
☐ M0169 UPWARD REALLOCATION

| % OF TIME | 16. COMPLETE CURRENT AND ACCURATE STATEMENT OF POSITION ESSENTIAL FUNCTIONS |
|---|---|
| | Under direct supervision, performs routine casework support functions by screening and registering applications, sorting of incoming documents, maintaining office supplies and forms, providing office receptionist functions for support staff. |
| | SPECIFICALLY: |
| 40% | 1. Conducts screening for application eligibility; provides general information of available programs to applicants. Reviews applications to ensure all questions are answered and has proper signature, sets appointment times for the applicant to return, issues pamphlets, registers, scans, uploads all applications and documents into system and withdraws applications. |
| 30% | 2. Identifies and sorts documents coming into the FCRC. Determines documents destination, scans and uploads to eligibility system ensuring all clearance are included with all applications for each Department Program. Performs routine data entry, filing, time-roll and warehouse control entries. |
| 25% | 3. Prepares files protecting customer's confidential information, performs office receptionist duties, answers inquiries and/or directs person to professional staff, enters information into the eligibility systems. Utilizes on the On-Line Reception System, logs in every person that enters the office and notifies casework staff of each client waiting to see them. Searches customers in eligibility systems forwarding to correct queue. |
| 5% | 4. Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above. |

| DIRECTOR OF CMS SIGNATURE | IMMEDIATE SUPERVISOR SIGNATURE | AGENCY HEAD SIGNATURE | DATE |
|---|---|---|---|
| | RECEIVED MAR 1 5 2016 By | | 3/9/16 |

CMS-104 (Rev. 4/09) Reset Form Print Form

Charge Number 0617R0701E



| 16. (CONTINUED) | |
|---|---|
| % OF TIME | 16. COMPLETE  CURRENT AND ACCURATE STATEMENT OF POSITION ESSENTIAL FUNCTIONS (Continued) |
| | |

**17. POSITION TITLE AND NUMBER OF IMMEDIATE SUPERVISOR** (Responsible for assigning and reviewing work, preparing, conducting and signing performance evaluations; effectively recommending and imposing disciplinary action and adjusting grievances for the incumbent of this position.)

| | WORKING TITLE (IF ANY) |
|---|---|
| Human Services Casework Manager    19788-10-94-076-00-01 -- | Local Office Administrator |

**18. CHECK THE APPROPRIATE BOX IF THIS POSITION IS A:**

☐ SUPERVISOR    OR    ☐ LEAD WORKER

NOTE: Supervisory or lead worker responsibilities **must** be described in a detailed duty statement(s) with a time percentage(s) allotted.
If a box was checked above, list position title, position number, and number of subordinate incumbents or authorized funded headcount:

| Position Title | Position Number | No. of Incumbents or Funded Vacancies |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**19. SPECIALIZED KNOWLEDGES, SKILLS, ABILITIES, LICENSURE OR CERTIFICATION NECESSARY FOR THE SUCCESSFUL PERFORMANCE OF THE WORK OF THIS POSITION.  NOTE: SINCE THERE ARE NOW SEVERAL OPTIONS OF SKILLS AND ABILITIES AND LICENSURE OR CERTIFICATION IDENTIFIED ON STANDARDS, THE PHRASE "SAME AS SPECIFICATION" CAN NO LONGER BE USED.**

Requires knowledge, skill and mental development equivalent to completion of high school and requires one year of clerical supportive experience in the Department of Human Services or equivalent training and experience.

Page 11 of 14



PLAINTIFF'S EXHIBIT 29

So, there should be a clear division of responsibilities. Emails and a memo proposing discipline, show that Ms. Herker was holding Complainant responsible for the monthly Postage Meter report. Complainant's job description as a PAEA does not have this responsibility listed in it.

However, the job description for the Office Assistant does include the postage meter report. Additionally, the wrap assignments for each show the postage meter report at a level E and F for Complainant and at a level D for the Office Assistant, on an A to Z scale order of priority (See Attachment E). That puts it at a higher level of priority for the Office Assistant. Discipline was being contemplated/proposed for Complainant for not completing the report one month, July.

No discipline was proposed for the Office Assistant not getting the report completed. Not being a team player was one complaint of Ms. Herker's when describing Ms. Dunkley. However, Ms. Dunkley (Complainant), Mr. Sheeley (SDS), Ms. Herker (Respondent), and Christine Meyer (Office Associate), who Ms. Dunkley avers she trained in three weeks, all were aware of the challenges the high turnover put on the office and the stress it was causing. And it appears unlikely all of the obstacles were initiated by Ms. Dunkley. So the actions (discipline) were disparate on the part of Ms. Herker if no other staff were being held accountable by discipline.

To establish a prima facie claim of unlawful retaliation under the Illinois Human Rights Act, 775 ILCS 5/6-101, or Title VII of the Civil Rights Act of 1990, 42 U.S.C. §2000e-3, which allows an inference of such unlawful retaliation, a Complainant must demonstrate that: (1) he or she engaged in statutorily protected expression; (2) he or she suffered adverse action by respondent; and (3) there was a causal link between his or her protected expression and adverse action. Upon establishment of such a prima facie case, the respondent bears the burden of articulating a legitimate, non-retaliatory reason for the adverse action, and upon such an articulation, the Complainant must be able to demonstrate the articulated reason was mere pretext for unlawful retaliation. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473 (7th Cir. 1996).

The Complainant alleges she was retaliated against, because she contacted Kerri Brockmeyer in the Human Resources Department on January 28, 2016 to relay her thoughts of ill-treatment, and was then disciplined for not following instructions to contact the union. The correspondence reviewed of her contact to Human Resources stated she felt she was subjected to bullying, animosity, unfair treatment and unfair practices. The counselling given was not discipline and it came from John Foreman, a Regional Director in Labor Relations, not the Respondent of this case. However, Complainant has suffered adverse action, after her expression of disparate treatment, in the form of discipline and excessive monitoring at her job. There appears to be a causal link between the expression and the action in that, Ms. Dunkley was evaluated months after Ms. Herker's promotion even though her evaluation was not due yet. Another worker's (Terri Romero) evaluation was past due, at the time Ms. Herker completed an interim evaluation of Ms. Dunkley, and

PLAINTIFF'S
EXHIBIT
29

had not been completed. Also, Ms. McGill's evaluation was due that August and had not been completed by Ms. Herker when Ms. Herker completed the September evaluation of Ms. Dunkley. As a result of disparate treatment that included discipline, Complainant has been denied upward mobility in this office.

April 2017 Respondent, Patricia Herker became Supervisor. The following discipline ensued:

6/5/2017 - Respondent issues Complainant an oral reprimand for failure to register client information correctly

6/19/17 - Respondent issues counseling to Complainant

7/3/2017- Respondent issues a 5 day suspension

7/13/17- Respondent issues an oral reprimand to Complainant

8/7/17 - Respondent issued a 7 day suspension for failure to follow supervisory instructions and failure to

8/15/17- Respondent attempts to discipline Complainant for Postage Meter report This responsibility added to Complainant's 5/17 interim evaluation. Not in previous evaluations.

Complainant filed an additional complaint of retaliation in November 2017.

In addition to those things, she alleges she has been closely monitored in her activities including her breaks and lunch. The Respondent merely stated the things she did not think were appropriate in Complainant's personality as opposed to Complainant's inability to perform her job. The areas in which she stated Ms. Dunkley was deficient were also areas in which the SDS gave recommendations that were not adhered to. Further, Ms. Dunkley was able to show she was being held responsible for some responsibilities that were another staff person's primary job duties.

Complainant also added another complaint which had a basis of retaliation concerning a time off request that was initially approved, then disapproved by Respondent, without any correspondence with Complainant. In the report is the conversation whereby the Respondent was asked why the time was changed by Complainant and Respondent said "operational needs". Respondent, Patricia Herker, did not give any further explanation for the changed status. And expected the Complainant to know she (Herker) had made the change without informing her (Dunkley) of the change. This was done within a timeframe to show retaliation intent by Respondent.

**Complainant,** Jennifer Dunkley, has shown there may have been some violation of DHS Directives or policies in the incidents she has presented. They are:

1) Ms. Dunkley was hired in as a Public Aid Eligibility Assistant. She began working at the Montgomery County FCRC in September 2015. At that time Janet Swartz was her Supervisor and she received two reasonable evaluations. Respondent became Complainant's supervisor in April 2017. Complainant, the only black staff person, was subjected to an evaluation that was negative and most staffs reporting to Respondent were not evaluated during that time frame and still have not been evaluated. Ms. Dunkley was the only certified staff evaluated in this time frame; months after



PLAINTIFF'S EXHIBIT
29

Respondent became her supervisor.

2) Respondent appeared to not only not give Complainant a chance to learn her job, but, regularly emailed (excessively) Complainant to count down minutes Complainant missed from Respondent's goal of precisely 1:00 to 2:00 lunch times - same with breaks - compliance to the exact minutes were expected from Complainant alone.

3) Complainant did show job duties were confusing at best. The SDS, Mr. Sheeley, wrote recommendations to assist Ms. Dunkley that were not implemented by Respondent.

4) Complainant was able to show there was a causal link between her protected activity and the retaliatory behavior. Respondent did not articulate a clear non-retaliatory reason for her actions.

## XVI. CONCLUSIONS:

Regarding the allegation of Discrimination - The allegation is unfounded.
Regarding the allegation of Harassment - The allegation is founded
Regarding the allegation of Retaliation- The allegation is founded

## XVII. RECOMMENDATIONS:

**IR recommends that;**

- All discipline initiated/implemented by Ms. Herker be removed from Complainant's record and files;

- Complainant be allowed to relocate to another FCRC in a position equivalent to the promotion she lost due to the discipline;

- Respondent be instructed to take the following training sessions: Non-Discrimination/Anti-Harassment, Cultural Competence, and Supervisory Series offered by BSDT.

- IR further recommends that the case be closed upon notification and documentation showing that these recommendations have been implemented, no later than July 1, 2018.

Exhibit 1
page 1

Exhibit 10

**FILED**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

NOV 04 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| Jennifer A. Dunkley, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-2189-DWD |
| | ) |
| AFSCME Local 2600 and Illinois | ) |
| Department of Human Services, and | ) |
| Kimberly Peltes, and Monica Monroy | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S VERIFIED PETITION TO CHANGE JUDGE FOR CAUSE

Plaintiff, Jennifer Dunkley, Pro Se submits this Verified Petition to Change Judge for Cause, and in support thereof states as follows:

### INTRODUCTION

Plaintiff Jennifer Dunkley was employed by the Illinois Department of Human Services, where she has served as a Public Aid Eligibility Assistant in Montgomery County and Marion County, Illinois, She has also served as Social Services Career Trainee at the Family Community Resource Center in East Alton, Madison County, Illinois. Plaintiff Jennifer Dunkley currently works for Illinois State in the Department of Health and Family Services. On December 19, 2018, Plaintiff, Jennifer Dunkley filed her complaint in Case No. 18-2189 alleging Local 2600 AFSCME and Illinois Department of Human Services engaged in racial discrimination against her. On October 22, 2019, Plaintiff filed another complaint in Case No. 19-146 alleging Illinois Department of Human Services and two of its employees, Defendants Kimberly Peltes and Monica Monroy, engaged in racial discrimination; perpetuated and condoned a hostile work environment

1

Exhibit 1
Page 2

based on her race; engaged in harassment and disparate treatment; intentionally discriminated against her due to her race; and engaged in retaliatory practices when she filed racial discrimination complaints.

## FACTS

1. The Plaintiff, Jennifer Dunkley started employment with Illinois Department of Human services on September 1, 2015 in the position of Public Aid Eligibility Assistant.

2. The Plaintiff, Jennifer Dunkley is a certified employee of Illinois Department of Human services in the position of Public Aid Eligibility Assistant.

3. The Plaintiff, Jennifer Dunkley is a member of a protected class, and was the only person of color, who is black, working in the Montgomery County FCRC. She was also the only person of color, who is black, working as a Social Services Career Trainee in the East Alton, Madison County FCRC office during the time of the alleged racial discrimination.

4. There were three other Social Services Career Trainees, who were white, working in the Madison County/East Alton FCRC office.

5. The Plaintiff, Jennifer Dunkley alleges that defendant, Kimberly Peltes failed to promote plaintiff from the position of Social Services Career Trainee to Human Services Caseworker due to racial discrimination and Retaliation.

6. The Plaintiff, Jennifer Dunkley alleges that she was subjected to harassment, disparate treatment and intentional racial discrimination, hostile work environment and retaliation.

7. Plaintiff, Jennifer Dunkley alleges that she has been subjected to an ongoing campaign of intentional racial discrimination by the Defendant, Illinois Department of Human Services.

8. Plaintiff, Jennifer Dunkley has tried to mitigate these injuries by requesting transfers,

Exhibit 1
pg 3

applying for other positions and filing complaints with Illinois Department of Human Resources, Illinois Bureau of Civil Affairs, and the EEOC.

9.  The Plaintiff, Jennifer Dunkley alleges that defendants, Illinois Department of Human Services and AFSCME Local 2600 has been aware of these violations of Plaintiffs civil rights and have failed to implement their anti-discrimination policies.

10.  On May 27, 2020, the Court granted Defendants' Motion to consolidate case number 19-1146 with case number 18-2189 and directed that all filings bear case number 18-2189-NJR.

11. On October 5, 2020, Pursuant to Administrative Order No. 277, plaintiff's case was transferred from Chief Judge Nancy J. Rosenstengel and reassigned to Judge David W. Dugan.

12. On July 26, 2021 the Defendants filed a Motion for Summary Judgment.

13. On August 24, 2021 Plaintiff, Jennifer Dunkley filed a response in opposition to the Defendants Motion for Summary Judgment.

14.  On October 5, 2021 the Defendants Motion for Summary Judgment was granted.

15. On October 7, 2021 Plaintiff filed two Notices of Appeals 21-2833 and 21-2834

16. On October 7, 2021 Plaintiff filed a Motion to Recuse Judge David W. Dugan.

17. On October 13, 2021 Plaintiff filed a Petition for Permission to Appeal from an Interlocutory Order Pursuant to 28 U.S.C. 1292(b).

18. On October 13, 2021 Plaintiff filed a Notice of Interlocutory Appeal 21-2878

19. On October 19, 2021 Plaintiff Appeals 21-2833 and 21-2834 were dismissed pursuant to Federal Rule of Appellate Procedure 42(b).

Exhibit 1
page 4

20. On November 1, 2021 Plaintiff's Motion to Recuse Judge David W. Dugan, and Motion for Permission to Appeal from an Interlocutory Order Pursuant to 28 U.S.C. 1292(b) were denied.

21. On November 1, 2021 Status Conference was set for 11/9/2021 at 2:00 PM via Zoom video conference before Judge David W. Dugan.

## LEGAL STANDARD

### 28 U.S. Code § 455 - Disqualification of justice, judge, or magistrate judge

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

I.    **Prejudice is seen in the issue of the defendants committing perjury and Judge David W. Dugan ignoring the issue.**

Defendant Kimberly Peltes committed perjury in her Declaration Statement when she said "ultimately, on August 20, 2019, Ulanda Lloyd made the decision to not certify Plaintiff as a Human Services Caseworker".

Plaintiff believes that # 42 in the defendant's Declaration, under penalty of perjury, as required by 28 U.S.C. §1746, by Kimberly Peltes, and #59 in Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgment is not true and the defendants and their counsel knew it was not true. This is material matter in this case because Kimberly Peltes in her role as supervisor did not have the authority to certify or demote the plaintiff. This responsibility is solely for the Local Office Administrator, who was Ulanda Lloyd in August 2019. The plaintiff reported to the district court that Kimberly Peltes may have committed perjury in her declaration.

In August 2019, Ulanda Lloyd was off from work for an extended period of time due to a death in her family.  Approximately August 13, 2019 through August 24, 2019 or longer. On August 20, 2019, Kimberly Peltes called plaintiff into a meeting and told her that she would not be certified and that she should report to Marion County FCRC for work on August 21, 2019.

Exhibit 1
Pg5

In her August 13, 2019 email Peltes wrote "I assume Ulanda will be out of the office for a while so I wanted to reach out in attempt to see what can be done to resolve this matter". *See* Exhibit 1, Dunkley Declaration ¶ 10; Exhibit 18, Peltes August 13, 2019, email, p1.

Evidence of Kimberly Peltes emails which were submitted to the court show that Ulanda Lloyd did not make the decision not to certify the plaintiff as caseworker. In Kimberly Peltes August 13th email to Angela Imhoff she states, " I am attempting to see if there is any kind of update as to what has been decided regarding Ms. Dunkley. In the same email Peltes also states "I assume Ulanda will be out of office for a while so I wanted to reach out and see what can be done in this matter. Kimberly Peltes, August 19th email to Angela Imhoff she asks, "Who are we waiting for to make a decision? Peltes August 19th, 2019 email shows that a decision regarding plaintiff's certification was not made as yet. The plaintiff was demoted on August 20, 2019 by Kimberly Peltes and not by Ulanda Lloyd.

## II.    Bias of Judge David W. Dugan

Judge David W. Dugan failed to view all inferences and the weight of all evidence, in the light most favorable to the plaintiff, who was the non-moving party because of his bias.

The Plaintiff, Jennifer Dunkley is an employee of the State of Illinois since September 1, 2015. She brought claims against the State of Illinois, Department of Human Services for racial discrimination, hostile work environment harassment, disparate treatment, intentionally discriminated and retaliation. Defendant Illinois Department of Human Services, Kimberly Peltes and Monica Monroy are being represented by the Illinois State Attorney General.

Judge David W. Dugan worked for the State of Illinois in the general practice of law in Madison County, Illinois, during which he served as a part-time Assistant States Attorney prior to becoming a judge. In February of 2017, Judge Dugan was nominated to be a Circuit Judge by the Illinois Supreme Court Chief. Justice Lloyd Karmeier and then appointed to the Circuit Court by the Illinois Supreme Court.

Judges may recuse themselves as the judge in cases where there may be a potential personal bias or other personal involvement in the case without either party bringing an issue to the court's attention. As such, a recusal is mandated. However, Judge David Dugan, a former employee of

5

Case: 23-2215    Document: 8    Filed: 06/27/2023    Pages: 110
Case 3:18-cv-02189-DWD    Document 323-1    Filed 11/28/22    Page 6 of 8    Page ID #5167
Case 3:18-cv-02189-DWD    Document 250    Filed 11/04/21    Page 6 of 8    Page ID #4375

Exhibit 1
pg 6

the State of Illinois, did not recuse himself, furthermore on October 19, 2021 Judge Dugan denied

Plaintiff's motion to recuse.

    Judge J. Phil Gilbert and Magistrate Judge Reona J. Daly were assigned to plaintiff's case on

12/19/2018. On 12/20/2018 Judge J. Phil Gilbert recuse himself from the plaintiff's case. Similar

to Judge David W. Dugan, Judge J. Phil Gilbert also had relationship with the State of Illinois. The

Special Committee that reviewed Judge J. Phil Gilbert circumstances said for him, disqualification

from all cases to which the State of Illinois, or any of its employees, is a party, would best serve

to avoid any appearance of partiality.


**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully requests that the Plaintiff's

Verified Petition to Change Judge for Cause be granted.



I declare under penalty of perjury that the foregoing is true and correct.



Executed on  **11-4-2021**        Document signed by  *Jennifer Dunkley*
          Date                                   Jennifer Dunkley



Notary Public

*Amanda Kuester*
Title and Rank


"OFFICIAL SEAL"
AMANDA KUESTER
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES SEPT. 26, 2022

_____
Date of Commission Expiry

**9-26-2022**


6

Case 3:18-cv-02189-DWD   Document 250   Filed 11/04/21   Page 7 of 8   Page ID #4376

Exhibit 1
pg 7

## AFFIDAVIT

State of   **ILLINOIS,**   County of   **BOND**

My current legal name is <u>JENNIFER DUNKLEY</u>, and my current occupation is <u>PUBLIC AID</u>

<u>PROGRAM QUALITY ANALYST</u>. My current address of residence is <u>108 SOUTH SPRUCE</u>

<u>STREET, GREENVILLE, IL, 62246</u>

I hereby state that the information above is true, to the best of my knowledge. I also confirm that

the information here is both accurate and complete, and relevant information has not been

omitted.

Signature of Individual

*Jennifer Dunkley*

Date

11 - 4 - 2021

Notary Public

*Amanda Kuester*

Title and Rank

**"OFFICIAL SEAL"**
AMANDA KUESTER
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES SEPT. 26, 2022

Date of Commission Expiry

9 - 26 - 2022

Exhibit 1
pg 8

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, I filed the foregoing PLAINTIFF'S VERIFIED PETITION

TO CHANGE JUDGE FOR CAUSE with the Clerk of the Court. I hereby further certify that on

November 4, 2021 I mailed by United States Postal Service the same document to the following

registered participant:

Melissa J. Auerbach
Lead Counsel,
ARDC No.
3126792
Dowd, Bloch, Bennett, Cervone, Auerbach &
Yokich 8 South Michigan Avenue, 19 Floor
Chicago, Illinois 60603
Email: mauerbach@laboradvocates.com

Taylor R. Traynoff #6330557
Assistant Attorney General Attorney for Defendant,
500 South Second Street
Springfield, IL 62701
Phone (217) 782-2077 By: s/ Taylor R. Traynoff
Fax (217) 782-8767 Taylor R. Traynoff
Email: ttraynoff@atg.state.il.us

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618)664-7343
Email:

Jennifer Dunkley, Plaintiff

*Jennifer Dunkley*

Dated: November 4, 2021

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**Jennifer A. Dunkley, Plaintiff,**

**v.**

**AFSCME Local 2600, et al., Defendant,**

**FILED**

**NOV 2 8 2022**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
E. ST. LOUIS OFFICE

**Case No. 3:18-CV-2189-DWD**

## PLAINTIFF'S SECOND VERIFIED PETITION TO CHANGE JUDGE FOR CAUSE

Plaintiff, Jennifer Dunkley, Pro Se submits this Second Verified Petition to Change Judge for Cause. On November 4, 2021 Plaintiff filed a Verified Petition to Change Judge for Cause.(exhibit 1) Judge David W. Dugan was the challenged judge.However, it was  Judge Dugan who gave the order denying the plaintiff's Verified Petition to Change Judge for Cause. There was no hearing on the motion before a judge other than the challenged judge.

**Plaintiff submits this Second Verified Petition to Change Judge for Cause regarding Bias by  Judge David Dugan because the litigant is Pro Se.**

### INTRODUCTION

Plaintiff Jennifer Dunkley was employed by the Illinois Department of Human Services,where she has served as a Public Aid Eligibility Assistant in Montgomery County and MarionCounty, Illinois, She has also served as Social Services Career Trainee at the Family Community Resource Center in East Alton, Madison County, Illinois. Plaintiff Jennifer Dunkley currently works for Illinois State in the Department of Health and Family Services.

Plaintiff, Jennifer Dunkley filed her complaint in Case No. 18-2189 alleging Local 2600 AFSCME and Illinois Department of Human Services engaged in racial discrimination against her on December 19, 2018. Plaintiff filed another complaint in Case No. 19-146 alleging Illinois Department of Human Services and two of its employees, Defendants Kimberly Peltes and Monica Monroy, engaged in racial discrimination; perpetuated and condoned a hostile work

environment based on her race; engaged in harassment and disparate treatment; intentionally discriminated against her due to her race;and engaged in retaliatory practices when shefiled racial discrimination complaints.

      On August 3, 2020, the district court dismissed the Title VII claims against Peltes and Monroy and the section 1981 and 1983 claims against the Department under Fed. R. Civ. P. 12(b)(6).

      On October 5, 2021, the district court granted summary judgment in favor of Peltes, Monroy, and AFSCME on the remaining claims against them under Fed. R. Civ. P. 56.

      On October 13, 2021 Plaintiff filed a Petition for Permission to Appeal from an Interlocutory Order Pursuant to 28 U.S.C. 1292(b), Court of Appeals case No. 21-2878

      On May 25 2022, Court of Appeals case No. 21-2878 was dismissed for lack of jurisdiction.

      Plaintiff bought her claims against IDHS pursuant to Section 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. §1981.

Trial will be to a jury

## LEGAL STANDARD

**Change of Judge for Cause**

a)Grounds. A party is entitled to a change of judge if the party shows that the assigned judge's interest or prejudice would prevent a fair and impartial hearing or trial.
(b)Procedure.
(1)Motion, Timing, and Form. A party seeking a change of judge for cause must file a motion no later than 10 days after discovering that grounds exist, but may not file a motion after a hearing or trial begins. The motion must state specific grounds for the change of judge and be supported by an affidavit. Allegations of interest or prejudice that prevent a fair and impartial hearing or trial that arise after commencement of the hearing or trial may be preserved for appeal by making an appropriate motion.
(2)Further Action by Judge. If a party files a timely motion for change of judge, the judge should not proceed, except to enter necessary temporary orders before the action can be transferred to the presiding judge or the presiding judge's designee. If the named judge is the presiding judge, that judge must assign the motion to another judge.

(c)Hearing, Disposition, and Effect on Other Defendants.
(1)Hearing and Ruling. Promptly after a party files a timely motion under this rule, the presiding judge must provide for a hearing on the motion before a judge other than the challenged judge. After holding the hearing, the hearing judge must decide the issues by a preponderance of the evidence and enter an order stating findings and ruling on the motion. The hearing judge will then return the matter to the presiding judge.
(2)Assignment or Reassignment. The presiding judge will promptly assign the action back to the original judge if the motion is denied, or will make a new assignment if the motion is granted.
(3)Effect on Other Defendants. If there are multiple defendants, the grant of a motion for change of judge filed by one or more defendants does not require a change of judge as to the other defendants, even though the change of judge may result in severance for trial purposes.

## ARGUMENT

**1. Judge David Dugan is biased and condescending toward the pro se plaintiff.**

a) A Final pretrial conference was held on November 22, 2022, the plaintiff had submitted a Final Pretrial Order, the attorney for the defendant had not responded to plaintiff's request for feedback and input on the document.  The attorney for the defendant did not submit a Proposed Final Pretrial Order. Judge Dugan chided the pro se plaintiff telling her that she was not ready to go to trial because her pretrial order was too long, also that it had to be a Joint Final Pretrial Order. The plaintiff's pretrial order was thirty pages in length. A Joint Final Pretrial Order was not submitted to the court because the attorney for the defendant, Illinois Department of Human Services, did not respond to the plaintiff's email requesting her input and feedback on the document that the plaintiff wrote. Also, the attorney for the defendant did not submit a proposed pretrial order, Judge Dugan did not  chide her for not being ready to go to trial.
b) At the final pretrial conference Judge David Dugan told the plaintiff that he could dismiss her case. The pro se litigant felt intimidated by this arbitrary threat, since Judge Dugan did not give legal grounds for his statement.
c) At the final pretrial conference the attorney for the defendant made an oral motion to postpone the trial date from December 5, 2022. The attorney for the defendant stated that she was double booked and not prepared to go to trial. She also stated that there are only two attorneys in her office so she was overwhelmed. The oral  motion was granted even though the pro se plaintiff

objected on the grounds that her case has been in court since 2018 and she had already served the subpoenas.

d) Judge Dugan stated that he didn't want to waste the jurors time if the pro se plaintiff was not ready, the plaintiff assured the judge that she was ready, however he told her she was not ready. Plaintiff has not missed deadlines and has submitted all the necessary paperwork in a timely manner.

e) Judge Dugan stated that he had a complex case starting in 2023 that could go on for three months and he didn't foresee the plaintiff's case being put back on the court's calendar until the middle of 2023. Plaintiffs have had previous trial dates set for Jury Trial set for 9/20/2021 at 9:00 AM , Jury Trial for 1/31/2022 at 9:00 AM,  and Jury Trial for 12/5/2022 at 9:00 AM. Attorney for the defendant oral motion for postponement of  Jury Trial for 12/5/2022  was granted. Judge David Dugan  did not set a new trial date for the pro se litigant's case.

**2. Transcripts not available for all conferences held by Judge David Dugan.**

a) Previously Plaintiff had called to request information about ordering  transcripts from court conferences and she  was told that no court reporter was there to take minutes so transcripts were not available.

**3. On November 22, 2022 Judge David Dugan ordered a Mandatory Mediation Referral for the  pro se plaintiff's case. This is unfair.**

a) The Seventh Amendment (Amendment VII) to the United States Constitution is part of the Bill of Rights. This amendment codifies the right to a jury trial in certain civil cases and inhibits courts from overturning a jury's findings of fact.

b) This court has a mandatory mediation program, however, pro se plaintiff Jennifer Dunkley's case is exempt from automatic referral to the mandatory mediation program.

c) Pro se plaintiff voluntarily participated in a settlement conference with AFSCME Local 2600 on 4/8/2021.

d) Illinois Department of Human Services (IDHS) did not request or choose to participate in the settlement conference.

**4. Judge David Dugan did not process the plaintiff's November 4, 2021 Verified Petition to Change Judge for Cause in accordance with proper procedure.**

a) On December 14, 2021, Judge Dugan erroneously called it a Motion For Recusal instead of Change Judge for Cause.

b) Judge Dugan continued to proceed with the case. He did not , except to enter necessary temporary orders, he did not transfer the action to the presiding judge.

**5. Judge David Dugan actions reflect his bias because the litigant is pro se**

    a)  Judge Dugan has said to the plaintiff multiple times that this is not Petty court. Even though the plaintiff has been following the procedure rules for this court.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Plaintiff's

Second Verified Petition to Change Judge for Cause be granted.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on _____Nov. 28, 2022_____ Date

Document signed by _~Jennifer Dunkley~_ Jennifer Dunkley

**Notary Public**

_~Ryan Champ~_ Title and Rank
Notary

    4/13/25 _____ Date of Commission Expiry

"OFFICIAL SEAL"
RYAN CHAMP
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES APRIL 13, 2025

# AFFIDAVIT

State of      <u>ILLINOIS,</u>      County of      <u>BOND</u>

My current legal name is <u>JENNIFER DUNKLEY</u>, and my current occupation is <u>PUBLIC AID</u>

<u>PROGRAM QUALITY ANALYST</u>. My current address of residence is <u>108 SOUTH SPRUCE</u>

<u>STREET, GREENVILLE, IL, 62246</u>

I hereby state that the information above is true, to the best of my knowledge. I also confirm that

the information here is both accurate and complete, and relevant information has not been

omitted.

**Signature of Individual**

_Nov. 28, 2022_ **Date**

_Jennifer Dunkley_

**Notary Public**

_Ryan Champ_ **Title and Rank**

```
"OFFICIAL SEAL"
RYAN CHAMP
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES APRIL 13, 2025
```

_4/13/25_ **Date of Commission Expiry**

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022 , I filed the foregoing PLAINTIFF'S SECOND
VERIFIED PETITION TO CHANGE JUDGE FOR CAUSE with the Clerk of the Court. I
hereby further certify that onNovember 28, 2022  I mailed by United States Postal Service the
same document to the following registered participant:

Melissa J. Auerbach, Lead Counsel ARDC No. 3126792
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich 8 South Michigan Avenue, 19 Floor
Chicago, Illinois 60603
Email: mauerbach@laboradvocates.com

Megan Ann Ditzler
Office of the Attorney General-Springfield
500 South Second Street
Springfield, IL 62701
217-782-1841
Fax: 217-782-8767
Email: Megan.Ditzler@ilag.gov

Maria D. Gray
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62701
217-782-5819
Fax: 217-524-5091
Email: Maria.Gray@ilag.gov

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618)616-8708

Jennifer Dunkley, Plaintiff

*Jennifer Dunkley*

Jennifer Dunkley, Plaintiff

November 28, 2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jennifer A. Dunkley, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:18-CV-2189-DWD** |
| | ) | |
| AFSCME Local 2600 and Illinois | ) | |
| Department of Human Services, and | | |
| Kimberly Peltes, and Monica Monroy | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION TO RECUSE JUDGE DAVID W. DUGAN

Plaintiff, Jennifer Dunkley, Pro Se submits this Motion to Recuse Judge David W. Dugan, and in support thereof states as follows:

### Introduction

Plaintiff Jennifer Dunkley was employed by the Illinois Department of Human Services, where she has served as a Public Aid Eligibility Assistant in Montgomery County and Marion County, Illinois, She has also served as Social Services Career Trainee at the Family Community Resource Center in East Alton, Madison County, Illinois. Plaintiff, Jennifer Dunkley is an employee of the State of Illinois and works in the Department of Health and Family Services.

On December 19, 2018, Plaintiff filed her complaint in case No.18-2189 alleging AFSCME Local 2600 and Illinois Department of Human Services engaged in racial discrimination against her. On October 22, 2019, Plaintiff filed another Complaint in Case No. 19-1146 alleging Illinois Department of Human Services and two of its employees, Defendants Kimberly Peltes and Monica Monroy, engaged in racial discrimination; perpetuated and condoned a hostile work environment based on her race; engaged in harassment and disparate treatment; intentionally discriminated against her due to her race; and engaged in retaliatory practices when she filed racial discrimination complaints. On February 25, 2020 Illinois Department of Human Services filed a motion to consolidate case No.

19-1146 and case No.18-2189. On May 27, 2020 the court granted Illinois Department of Human Services motion to consolidate the two complaints filed by plaintiff, Jennifer Dunkley.

The Defendants, Department of Human Services, and Kimberly Peltes, and Monica Monroy are being represented by the Attorney General for the State of Illinois. Judge David W. Dugan engaged in the general practice of law in Madison County for thirty years, during which he served as a part-time Assistant States Attorney. In February of 2017, Judge Dugan was nominated to be a Circuit Judge by the Illinois Supreme Court Chief Justice Lloyd Karmeier and then Appointed to the Circuit Court by the Illinois Supreme Court.

Judge J. Phil Gilbert and Magistrate Judge Reona J. Daly were assigned to plaintiff's case on 12/19/2018. On 12/20/2018 Judge J. Phil Gilbert recuse himself from the case.

Pursuant to Administrative Order No. 277 Judge David W. Dugan was appointed to the plaintiff's case on 10/05/2020, however Judge David W. Dugan did not recuse himself from the case even though he has a prior professional association with Defendants attorney.

Judicial ethics are covered in Canon 3 of the *Supreme Court Rules*, which says that a judge should perform the duties of judicial office impartially and diligently; and then sets out rules for doing so. Rule 63(C) in Canon 3 states:

[A] Judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned.

**The Reasons Why Recusal is required.**

The Plaintiff is now filing this Motion firstly, in an abundance of caution to ensure that an impartial judge, who does not have a personal history and professional association with Defendants attorney, will preside over the trial. Secondly, a reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned.

The case involves plaintiff's racial discrimination complaint against her employer and union. The Plaintiff disputed No.59 of Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgement.

59. Ultimately, on August 20, 2019, Ulanda Lloyd made the decision to not certify Plaintiff as a Human Services Caseworker. *See* Exhibit 1, Peltes Declaration, ¶ 42.

59: DISPUTED

In August 2019, Lloyd was off from work for an extended period of time due to a death in her family. On August 20, 2019 Ulanda Lloyd was off from work. On August 20, 2019 Peltes called plaintiff into a meeting and told her that she would not be certified and that she should report to Marion County FCRC for work on August 21, 2019. In her August 13, 2019 email Peltes wrote "I assume Ulanda will be out of the office for a while so I wanted to reach out in attempt to see what can be done to resolve this matter". *See* Exhibit 1, Dunkley Declaration ¶ 10; Exhibit 18, Peltes August 13, 2019, email, p1.

Evidence of Kimberly Peltes emails which were submitted to the court show that Ulanda Lloyd did not make the decision not to certify the plaintiff as caseworker. In Kimberly Peltes August 13, 2019 email to Angela Imhoff she states, " I am attempting to see if there is any kind of update as to what has been decided regarding Ms. Dunkley. In the same email Peltes also states "I assume Ulanda will be out of office for a while so I wanted to reach out and see what can be done in this matter. In Kimberly Peltes, August 19, 2019 email to Angela Imhoff she asks, "Who are we waiting for to make a decision? (Exhibit 18)

Peltes August 19, 2019 email shows that a decision regarding plaintiff's certification was not made as yet. The plaintiff was demoted on August 20, 2019. In August 2019, Lloyd was off from work for an extended period of time due to a death in her family. On August 20, 2019 Ulanda Lloyd was off from work.

Plaintiff believes that # 42 in the defendant's Declaration, under penalty of perjury, as required by 28 U.S.C. §1746, by Kimberly Peltes, and #59 in Defendants Peltes and Monroy Undisputed Material Facts in Motion for Summary Judgment is not true and the defendants knew it was not true. This is material matter in this case because Kimberly Peltes in her role as supervisor did not have the authority to certify or not to certify the plaintiff. This is the responsibility of the Local Office Administrator. On August 20, 2019 it was Kimberly Peltes, supervisor, who did not certify the plaintiff, Jennifer Dunkley, and demoted the plaintiff without authority. The plaintiff was told by Kimberly Peltes to return to her previous position of Public Aid Eligibility Assistant at the Marion County FCRC on August 21, 2019.The plaintiff's final performance

review on August 20, 2019 is not signed by the Local Office Administrator, Ulanda Lloyd because she was not at work. Ulanda Lloyd was not at the office on August 20, 2019 and she did not make the decision not to certify the plaintiff, and she did not demote the plaintiff. The plaintiff's final performance review on August 20, 2019 was not signed by the Local Office Administrator, Ulanda Lloyd when she returned to work at the end of August 2019.

In her Motion to Strike the plaintiff reported to the court that Kimberly Peltes may have committed perjury in her declaration, however, summary judgement was granted in favor of Defendant Kimberly Peltes.

Judges may recuse themselves as the judge in cases where there may be a potential personal bias or other personal involvement in the case without either party bringing an issue to the court's attention. Illinois Supreme Court Rule 63(c)(1) actually *requires* a judge to disqualify himself or herself in a case the judge's "impartiality might reasonably be questioned."

In conclusion, all Parties in this case are entitled to a fair and impartial trial, and that goal can only be accomplished through an impartial judge presiding over the trial. Consequently, for all the foregoing reasons, it would be improper for Judge David W. Dugan to preside over the trial of this matter.

**WHEREFORE**, for the foregoing reasons, Plaintiff requests respectfully that the Plaintiff's Motion be granted and Judge David W. Dugan be instantly recused from presiding over the trial of this matter.

Jennifer Dunkley, Plaintiff

Dated: October 7, 2021

4

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2021, I filed the foregoing PLAINTIFF'S MOTION TO RECUSE

JUDGE DAVID W. DUGAN with the Clerk of the Court. I hereby further certify that on October 7,

2021 I mailed by United States Postal Service the same document to the following registered participant:

Melissa J. Auerbach
Lead Counsel,
ARDC No.
3126792
Dowd, Bloch, Bennett, Cervone, Auerbach &
Yokich
8 South Michigan Avenue, 19 Floor
Chicago, Illinois 60603
Email: mauerbach@laboradvocates.com

Taylor R. Traynoff #6330557
Assistant Attorney General Attorney for Defendant,
500 South Second Street
Springfield, IL 62701
Phone (217) 782-2077
Fax (217) 782-8767 Taylor R. Traynoff
Email: ttraynoff@atg.state.il.us

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246
(618)664-7343
Email:Jennifer.dunkley@gmail.com

Jennifer Dunkley, Plaintiff

*Jennifer Dunkley*

Dated: October 7, 2021

Case 3:18-cv-02189-DWD   Document 223   Filed 10/07/21   Page 6 of 13   Page ID #4097
Case 3:18-cv-02189-DWD   Document 192-1   Filed 07/26/21   Page 1 of 7   Page ID #2861
Case 23-2315   Document 8   Filed 06/27/2023   Pages 110

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JENNIFER A. DUNKLEY,                  )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        No. 3:18-cv-02189-DWD
                                      )
LOCAL 2600 AFSCME, et al.,            )
                                      )
            Defendants.               )

### DECLARATION OF KIMBERLY PELTES

I, Kimberly Peltes, certify under penalty of perjury that the statements set forth in this affidavit are true and correct, I have direct and personal knowledge of the facts stated herein, I am over 21 years of age and of sound mind and body, and if called to testify, I would testify as follows:

1.      I have been employed by the Illinois Department of Human Services (IDHS) since January 1997.

2.      On May 1, 2020, I was temporary assigned to serve as the Local Office Administrator for the Madison County/East Alton Family Community Resource Center (FCRC). On January 16, 2021, I began serving as the Local Office Administrator.

3.      Between August 2018 and May 2020, I served as a Human Services Casework Manager at the Madison County/East Alton FCRC.

4.      Plaintiff began working at the Madison County/East Alton FCRC as a Social Services Career Trainee on September 17, 2018.

5.      I know Plaintiff to be black and, therefore a member of a protected class.

6.      Between September 17, 2018 and August 20, 2019, I served as Plaintiff's direct supervisor (officially referred to as Payroll Supervisor).

7.     A Social Services Career Trainee processes applications from State residents ("customers") seeking public assistance. Social Services Career Trainees interview customers and input their financial information into the system to determine a customer's eligibility for public assistance. These applications are referred to as cases.

8.     Once a case is certified, the customer will begin receiving public assistance based on the information entered into the system.

9.     Social Services Career Trainees serve a probationary period of up to twelve months and can be certified as a Human Services Caseworker anywhere from six to twelve months during this probationary period. It is very rare that a Social Services Career Trainee is certified prior to or at the six-month period. Typically, a Social Services Career Trainee is certified between nine and twelve months.

10.     At the conclusion of this probationary period, the Social Services Career Trainee will either be certified or not certified to become a Human Services Caseworker.

11.     A Human Services Caseworker assists with providing public assistance services available through IDHS programs to all eligible customers, explains and interprets eligibility criteria, requirements, procedures, policies, and practices to applicants for public assistance. A Human Services Caseworker also verifies customer data and determines initial or ongoing eligibility for public assistance and completes case documentation and enters data into automated computer systems.

12.     During their first two to three months, Social Services Career Trainees are not certifying cases, but instead receive on the job training, policy training, and training of the IES system (Integrated Eligibility System), which is the online case management system.

Case 3:18-cv-02189-DWD   Document 223   Filed 10/07/21   Page 8 of 13   Page ID #4099
Case 3:18-cv-02189-DWD   Document 192-1   Filed 07/26/21   Page 3 of 7   Page ID #2863
Case: 23-2215      Document: 8      Filed: 06/27/2023      Pages: 110

13.     During the probationary period, once a Social Services Career Trainee begins certifying cases, he or she is placed on one hundred percent review, meaning all the cases the trainee is working on are reviewed by a supervisor prior to the case being certifying.

14.     The duration of one hundred percent review is dependent on the trainee's performance, progress, and comprehension of applicable policy. Some Social Services Career Trainees remain on one hundred percent review through most of their time certifying cases and some are taken off and their work is only spot checked after several months if they are progressing well.

15.     Trainees who remain on one hundred percent review through most of their probation have successfully completed probation and been certified as Human Services Caseworkers.

16.     Being on one hundred percent review is not considered discipline.

17.     As Human Services Casework Manager, I would assign and review the work of the Social Services Career Trainees I managed, counselled them regarding their work performance, and prepared and signed their performance evaluations.

18.     As Plaintiff's supervisor, I performed the one hundred percent review of her work at the outset of her probationary period, when she began certifying cases.

19.     During the same time I was reviewing all of Plaintiff's work, I was also reviewing all of the work of trainee Lauren Dugan, who is white.

20.     I was not Melanie Cannon's manager and did not review her work.

21.     On November 13, 2019, I emailed Plaintiff and copied Jo Elle Parker and Local Office Administrator, Ullanda Lloyd, reminding Plaintiff that she was not to complete interviews

at that time since she had not received training and she was to send me an email prior to certifying cases. A true and accurate copy of that November 13, 2019 Email is attached as Exhibit 6.

22.     On November 29, 2018, I was copied on an email from Jill Outland, who forwarded an email from the Bureau of Training and Development regarding Plaintiff's participation at the AG02B training. A true and accurate copy of that November 29, 2018 Email is attached as Exhibit 10.

23.     This email did not determine whether Plaintiff was placed on one hundred percent review. At this time, Plaintiff was not authorized to certify cases or interview customers as she had not received training. Therefore, since she was not certifying cases, Plaintiff's work was not at the point where it would be under one hundred percent review.

24.     On December 3, 2018, upon Plaintiff's return from the AG02B training, I met with Plaintiff, Ulanda Lloyd, and Scott Lankford, after which I sent Plaintiff an email, and copied Ulanda Lloyd, following up on our meeting. A true and accurate copy of that December 3, 2018 Email is attached as Exhibit 11.

25.     On or around January 28, 2019, I informed Plaintiff that her work no longer had to be subject to one hundred percent review, meaning that she was permitted to certify cases without my review, and I would review her work after she certified the case.

26.     In January 2019, Ulanda Lloyd authorized Plaintiff to work overtime hours.

27.     Overtime hours are used to address backlogged cases. The availability of overtime hours depends on the availability of funding. The expectations of a Social Services Career Trainee working overtime hours is that they can work both independently and efficiently.

28.     I did not make the decision to revoke Plaintiff's overtime privileges. That decision was made by Ulanda Lloyd.

29.     On March 23, 2019, Plaintiff sent an email to Ulanda Lloyd, coping me, making a complaint of retaliation and racial discrimination against me.

30.     After spot checking Plaintiff's work, I found her error rate remained significantly high. On April 10, 2019, I sent Plaintiff an email informing her of the errors I found and that she could not certify cases until they had been reviewed. A true and accurate copy of that April 10, 2019 Email is attached as Exhibit 4.

31.     On April 11, 2019, I emailed Plaintiff explaining to her the impact of her work performance on a customer's experience in the office. A true and accurate copy of that April 11, 2019 Email is attached as Exhibit 15.

32.     Around May 29, 2019, I created a Corrective Action Plan for Plaintiff at the direction of the Regional Administrator, Angela Imhoff, in order to assist Plaintiff in improving areas of her work performance. A true and accurate copy of that Corrective Action Plain is attached as Exhibit 12.

33.     I have created Corrective Action Plans for Social Service Career Trainee when I have found areas of their work needed attention and improvement.

34.     On June 7, 2019, I emailed Plaintiff as a follow up a discussion regarding her work progress. A true and accurate copy of that June 7, 2019 Email is attached as Exhibit 13.

35.     Between June 14, 2019 and June 19, 2019, I did not review Plaintiff's work. Other supervisors who review Plaintiff's work during this time also found errors.

36.     On July 1, 2019, I sent an email to Angela Imhoff, Edrye Kelly, Ulanda Lloyd and copied Shannon Gnaegy explaining the process and results of Plaintiff's Corrective Action Plan. In that email, I made the recommendation that Plaintiff not be certified in her as a Human Services Caseworker. A true and accurate copy of that July 1, 2019 Email is attached as Exhibit 14.

37.     My recommendation that Plaintiff not be certified was based on Plaintiff's work performance and failure to show improvement in her work, because her error rate remained the same as when she first started her position, and because she struggled to understand policy.

38.     While I was aware of Plaintiff's March 23, 2019 complaint of retaliation and racial discrimination against me, my recommendation was not based on this complaint.

39.     I did not know of the complaints Plaintiff filed against me or Monica Monroy with the Bureau of Civil Affairs when I made my recommendation.

40.     I also did not consider Monica Monroy's November 28, 2019 email report concerning Plaintiff's participation in the AG02B training when making my recommendation because it was received very early on in Plaintiff's time as a Social Services Career Trainee.

41.     I do not have authority to certify Social Services Career Trainees to become Human Services Caseworker.

42.     As Local Office Administrator, Ulanda Lloyd made the decision not to certify Plaintiff as a Human Services Caseworker on August 20, 2019.

43.     Since Plaintiff was not certified, she returned to her prior position of Public Aid Eligibility Assistant at the Montgomery County FCRC on August 21, 2019.

44.     I created a case review log of the cases Plaintiff certified between December 4, 2018 and July 19, 2019. As Human Services Casework Manager, whenever I received a new worker to supervise, I kept a log of the cases he or she worked on so I could track his or her progress. A true and accurate copy of that Case Review Log as attached as Exhibit 5.

45.     During my time as Human Services Casework Manager, I sent emails to employees other than Plaintiff, including white employees, regarding errors they made in their work.

I have read the foregoing and affirm that the facts contained herein are true and correct to the best of my knowledge and belief.

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY
PURSUANT TO 28 U.S.C. 1746(2)**

I declare under penalty of perjury that the foregoing is true and correct. Executed     July 26, 202

By: _____

Kimberl  Peltes
Defendant

*Exhibit 18*
*P1*

| | |
|---|---|
| **From:** | Peltes, Kimberly |
| **To:** | Imhoff, Angela |
| **Subject:** | RE: Jennifer Dunkley |
| **Date:** | Monday, August 19, 2019 11:25:05 AM |

Who are we waiting on to make a decision? I guess I am not understanding how they could justify even considering to certify her with all the documentation I have provided and why is the decision left up to someone else that is not even involved with her job performance? Would it be reasonable to reach out to Director Verry on this matter?

**From:** Imhoff, Angela
**Sent:** Wednesday, August 14, 2019 11:59 AM
**To:** Peltes, Kimberly
**Subject:** Re: Jennifer Dunkley
I've discussed with them and will again. I understand and share your concerns.

Sent from my iPhone

On Aug 14, 2019, at 12:56 PM, Peltes, Kimberly <Kimberly.Peltes@illinois.gov> wrote:

> Thank you for your response. I apologize for the push to get some kind of an answer however this has been almost 2 months of waiting for a response on the matter. Is there anyone else we can reach out to? I recall during the conference Director Verry and the Assistance Director were very adamant about not certifying SSCT's that are unable to do the job. She has not shown any signs of improvement and I do not feel any further training or reviews will benefit her
>
> **From:** Imhoff, Angela
> **Sent:** Tuesday, August 13, 2019 7:40 PM
> **To:** Peltes, Kimberly <Kimberly.Peltes@illinois.gov>
> **Subject:** Re: Jennifer Dunkley
> I still haven't heard anything. I'll notify you as soon as I hear something.

Sent from my iPhone

On Aug 13, 2019, at 2:13 PM, Peltes, Kimberly <Kimberly.Peltes@illinois.gov> wrote:

> Good afternoon,
> I am attempting to see if there is any kind of update as to what has been decided regarding Ms. Dunkley. She is still on 100 percent review per your instructions which occupies almost 90 percent of my time on a daily basis due to the amount of errors on her cases. There are no other SSCT's that have remained on 100 percent review as long as she has. Her 12 months will be up in September. I assume Ulanda will be out of the office for a while so I wanted to reach out in attempt to see what can be done to resolve this matter.
> Thank you.
> *Kim Peltes, Human Services Casework Manager*

*Exhibit 11*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JENNIFER A. DUNKLEY,                )
                                    )
    **Plaintiff,**              )
                                    )
**vs.**                             )    **Case No. 3:18-cv-2189-DWD**
                                    )
ILLINOIS DEPARTMENT OF HUMAN        )
SERVICES,                           )
                                    )
    **Defendant.**              )

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Plaintiff's Second Verified Petition to Change Judge for Cause ("Petition") (Doc. 323). In the Petition, Plaintiff argues as follows: (1) the Court is "biased and condescending" toward Plaintiff; (2) transcripts of status conferences are not available; (3) it was unfair for the Court to refer the case to mandatory mediation under the Court's Mandatory Mediation Plan; (4) the Court did not process Plaintiff's First Verified Petition to Change Judge for Cause (Doc. 250) according to the proper procedures; and (5) the Court is biased because Plaintiff is *pro se*. (Doc. 323, pgs. 3-5).

Initially, the Court notes that Plaintiff, without citation, relies only on the State of Arizona's Rules of Criminal Procedure. *See* Ariz. R. Crim. P. 10.1.[1] That legal standard does not govern Plaintiff's arguments or bind the Court in its resolution of the Petition.[2] However, in deference to Plaintiff, the Court will apply the appropriate federal standard.

---

[1] The Court was able to glean this fact, despite the absence of a citation, because Plaintiff quoted Rule 10.1 verbatim in the Petition.

[2] For this reason, the Court will not consider Plaintiff's fourth argument. (Doc. 323, pg. 5).

Under 28 U.S.C. § 455(a), "[a]ny...judge...of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test is "whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done." *See U.S. v. Herrera–Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) (citing *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985)); *accord U.S. v. Barr*, 960 F.3d 906, 919 (7th Cir. 2020).

In addition, a judge shall disqualify himself if a reasonable person would be convinced that "he has a personal bias or prejudice concerning a party." *See id.* § 455(b)(1); *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996) (*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1255 (7th Cir. 1993)). The alleged bias or prejudice must be based on some personal animus or malice that the court harbors toward a party, which a fair-minded person could not entirely set aside to judge the party or case. *See Hook*, 89 F.3d at 355 (quoting *U.S. v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir. 1985)). A recusal is required only if actual bias or prejudice is proved with compelling evidence. *See id.* (quoting *Balistrieri*, 779 F.2d at 1202). Further, the bias or prejudice against the party must arise from an extrajudicial source. *See id.* (quoting *Liteky v. U.S.*, 510 U.S. 540, 555 (1994); citing *U.S. v. Griffin*, 84 F.3d 820, 831 (7th Cir. 1996)). The Court's remarks—even if critical, disapproving, or hostile—ordinarily do not support a finding of bias or prejudice. *See id.* (quoting *Liteky*, 510 U.S. at 555; citing *Griffin*, 84 F.3d at 820). Likewise, expressions of impatience, dissatisfaction, annoyance, or even anger, within bounds, do not establish bias or prejudice. *See id.* (quoting *Liteky*, 510 U.S. at 555;

citing *Griffin*, 84 F.3d at 820). Ordinary efforts of courtroom administration, even when stern, are immune. *See id.* (quoting *Liteky*, 510 U.S. at 555; citing *Griffin*, 84 F.3d at 820).

Here, the Petition presents no basis for a disqualification under the above legal standards. At the most recent Final Pretrial Conference, the parties, again, failed to comply with the Court's Case Management Procedures and demonstrate that the case was ready for trial. It was for that reason alone, and not any perceived bias, that the case was continued and referred to mandatory mediation under the Mandatory Mediation Plan. The Court notes, though, it has granted Plaintiff considerable leeway, beyond that which is ordinarily given to parties with legal representation, to prosecute her case.

Further, under Section 2.1(A)(3) of the Mandatory Mediation Plan, if the Court determined a mediation was appropriate, then it could enter a Pro Se Mandatory Mediation Referral Order. The timing of such a referral is within the discretion of the Court. At the last Final Pretrial Conference and before the Court exercised its discretion under the Mandatory Mediation Plan, each party stated it had no objection to a mandatory mediation. (Docs. 319 & 320). It was only after the mandatory mediation was ordered that Plaintiff, despite her prior statement of no objection, sought to opt out of the mandatory mediation (Doc. 321). Also, the Court notes that the mandatory mediation was ordered, in part, because it would not delay the time in which Plaintiff's case could be rescheduled for trial. That is, the mandatory mediation could proceed to completion, simultaneously with trial preparation, before the next available civil trial date. The Court understands Plaintiff's desire to proceed to trial as soon as possible. Indeed, the Court shares that desire. However, as alluded to above, Plaintiff and Defendant must comply

with the Court's mandatory Case Management Procedures before the case will be deemed ready for trial. Finally, the record reflects that the Court and Clerk's Office have assisted Plaintiff in receiving all available transcripts, when requested. (Docs. 324 & 326).

For the foregoing reasons, the Petition is **DENIED**.

**SO ORDERED.**

Dated: February 3, 2023

s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge